**Daniel Neal HELLER, Plaintiff,**

v.

**Lawrence S. PLAVE, Defendant.**

No. 82–1347–Civ.

United States District Court,
S.D. Florida.

Feb. 4, 1987.

Daniel Neal Heller, Miami, Fla., pro se.

Michael Minkin, Asst. U.S. Atty., U.S. Attys.' Office, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HASTINGS, District Judge.

THIS CAUSE came before the Court at trial, which began on January 2, 1987 and continued for several inconsecutive days thereafter. After careful consideration of the evidence, legal and factual issues and being fully advised, this Court submits its Findings of Fact and Conclusions of Law. Some findings of fact may appear to be conclusions of law or vice versa, as some overlapping of this type is unavoidable.

### FINDINGS OF FACT

1. Daniel Neal Heller, (hereinafter referred to interchangeably as "Plaintiff" or "Heller") filed the instant complaint against Lawrence S. Plave, (hereinafter referred to interchangeably as "Defendant" or "Plave") alleging violations of 26 U.S.C. §§ 6103 and 7217. Those statutes provide a civil cause of action for improper disclosures of taxpayer return information by an Internal Revenue Service (IRS) investigator. The definition of "improper disclosures" is subject to interpretation, which this Court will undertake in its Conclusions of Law.

2. The instant cause is based upon a criminal investigation of Plaintiff, conducted by the IRS, which began in 1979. Defendant, as a Special Agent of the IRS, was responsible for investigating Heller for income tax evasion, and other violations of the Federal Income Tax statutes. Testimony at trial indicated that Defendant asked Plaintiff for various tax materials, such as the financial books and records of Plaintiff's legal practice, books of accounts, cash disbursement journal, and client ledgers. Upon Plaintiff's refusal to disclose the materials, Defendant advised him that all of Plaintiff's income needed reconstructing for the years in question, 1975 through

1977. Defendant informed Plaintiff that this would entail determining the identity of Plaintiff's clients, interviewing the clients, interviewing attorneys who worked with or against Plaintiff on cases, reviewing court files, and taking other necessary steps to determine who paid what to Plaintiff and when and how the amounts were paid.

3. Defendant wrote letters to many third-parties whom he believed had relevant information regarding Plaintiff's income. Such correspondence contained statements by Defendant that he was a Special Agent in the Criminal Investigation Division of the IRS conducting a criminal tax investigation of Daniel Neal Heller. The correspondence often referred to Plaintiff by name, as "a prominent attorney in Dade County, Florida." There were at least seven (7) letters of this type submitted as evidence. (Plaintiff's Exhibits 4 and 12.)

4. Several witnesses at trial stated that Defendant made specific disclosures to them regarding the status of Plaintiff's criminal investigation. As the witnesses expressed themselves differently, this Court will enumerate their testimony individually as follows:

*Witness #1:* Magaly Trujillo, a records clerk in Dade County Circuit Court, testified that the Defendant frequented the clerk's office to retrieve files. On one occasion, Defendant told Ms. Trujillo that he had pressed charges against Plaintiff and that a grand jury was impaneled. Ms. Trujillo further stated that Defendant said Heller would be indicted.

*Witness #2:* Joseph Burnett, a former client of Plaintiff, testified that Defendant said he was "out to get" Heller.

*Witness #3:* Murray Resnick, a former client of Plaintiff, testified that Defendant said Heller had a "very serious problem" involving tax evasion or tax trouble because he did not pay his taxes. Mr. Resnick further testified that Defendant said Plaintiff would be indicted and would not continue to practice law.

*Witness #4:* Charles Orenstein, a former client of Plaintiff, was contacted by Defendant regarding Heller's criminal investigation. According to Mr. Orenstein, Defendant said criminal prosecution had been recommended against Heller and Defendant would see to it that Plaintiff went to jail. This witness, however, was overzealous and appeared to embellish his testimony.

*Witness #5:* Jacqueline Atherton hired Plaintiff as her divorce lawyer in 1976. Ms. Atherton testified that Defendant contacted her and wanted to prove Heller was charging exorbitant fees, thereby cheating his clients. Further, Plave referred to Plaintiff as "unscrupulous."

*Witness #6:* Selma Kay also hired Heller to handle her divorce proceedings. Plave contacted her and said Plaintiff was guilty of tax evasion. This witness felt particularly intimidated by Defendant, as she testified that he continued to contact her, even after receiving the requested information.

*Witness #7:* Mark Roseman, a former client of Plaintiff, was summoned by Defendant to provide cancelled checks given to Heller. Mr. Roseman testified that Defendant presented him with a chart containing the amounts paid by Plaintiff's clients. Plave told Mr. Roseman that his payments were insignificant compared to other checks paid to Plaintiff.

*Witness #8:* Isabel Singer, another former client of Plaintiff, was contacted by Defendant. Plave told her that Heller was keeping improper income tax records and was in serious trouble because of such tax violations.

5. All of the above-witnesses carried different levels of credibility with this Court. Several, however, were particularly believable and the statements made to these witnesses, under 28 U.S.C. § 6103, were certainly improper. The following statements were in violation of the statute:

a. Defendant's statement to Ms. Trujillo that he had pressed charges against Plaintiff and that a grand jury was impaneled.

b. Defendant's statement to Mr. Resnick that Plaintiff would be indicted and would not practice law.

c. Defendant's statement to Ms. Atherton that Heller was unscrupulous.

d. Defendant's statement to Ms. Kay that Plaintiff was guilty of tax evasion.

e. Defendant's statement to Mr. Roseman that his payment to Plaintiff was insignificant compared to others.

f. Defendant's statement to Ms. Singer that Plaintiff was in serious trouble because of tax violations.

6. Defendant took the witness stand and testified that he never said any of the aforementioned accusatory statements. Defense counsel argued that perhaps some of the witnesses thought Plave said certain things because they were nervous about speaking to an IRS investigator. Defendant, in his testimony, admitted to characterizing Plaintiff as a "despicable human being."

7. Defense witness Thomas Lopez, an IRS employee, was questioned as to whether the type of statements made by Defendant would be proper disclosures. Mr. Lopez was very evasive and was not helpful in this regard.

## CONCLUSIONS OF LAW

1. Section 6103 of the Internal Revenue Code, 26 U.S.C. § 6103, provides that:

(a) General rule.—Returns and return information shall be confidential, and except as authorized by this title ...

(2) no officer or employee of the United States, ... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.

The Code defines "return information" in broad terms as follows:

[A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,....

26 U.S.C. § 6103(b)(2)(A).

Disclosures of taxpayer return information are authorized during the course of a criminal or civil tax investigation as follows:

An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

26 U.S.C. § 6103(k)(6).

2. The Code of Federal Regulations has further implemented the disclosure provisions as follows:

...[A]n officer or employee of the Internal Revenue Service ... is authorized to disclose taxpayer identity information (as defined in section 6103(b)(6)), the fact that the inquiry pertains to the performance of official duties, and the nature of the official duties in order to obtain necessary information relating to performance of such official duties or where necessary in order to properly accomplish any activity described in subparagraph (6) of paragraph (b) of this section.

26 C.F.R. § 301.6103(k)(6)–1(a).

Section (b)(6) defines such activities as appropriate "...to ascertain the amount of any liability ... to be collected...."

26 C.F.R. § 301.6103(k)(6)–1(b).

Such disclosures are permitted under the following restriction:

...only if the necessary information cannot, under the facts and circumstances of the particular case, otherwise reasonably be obtained in accurate and sufficiently probative form ... or if such activities cannot otherwise properly be accomplished without making such disclosure. 26 C.F.R. § 301.6103(k)(6)–1(a).

3. The IRS provides conduct guidelines for Special Agents during investigations as follows:

Tactful—A special agent should be tactful in all investigations conducted. He/she must avoid making any remarks or acts during or following the investigation which are likely to be misinterpreted.

Discreet—A special agent should be discreet in all investigations conducted. He/she must not make statements or ask questions that will divulge information which would tend to jeopardize the successful conclusion of the investigation. He/she must not unnecessarily injure the reputation of the person being investigated.

Internal Revenue Manual—Administration, Investigative Procedures, 9382.1(3) and (4).

"[E]ach agent must exercise particular care in every investigation. Examples of situations or conduct to be avoided are:

(c) expressions of personal views as to the merits of the case."

Internal Revenue Manual—Administration, 9382.2.

4. Section 7217 of the Internal Revenue Code, which was repealed by Section 357(b)(1) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97–248, 96 Stat. 324, established a civil remedy for damages resulting from the improper disclosure of returns and return information made before September 3, 1982. Section 7217(a) provided in pertinent part that:

[w]henever any person knowingly, or by reason of negligence, discloses a return or return information ... with respect to a taxpayer in violation of the provisions of section 6103, such taxpayer may bring a civil action for damages against such person....

Since the disclosures at issue occurred prior to June 30, 1982, Section 7217 controls.

5. "Congress enacted § 6103 to protect taxpayers' reasonable expectation that information submitted to the IRS would remain confidential." *Johnson v. Sawyer*, 640 F.Supp. 1126, 1132 (S.D.Tex.1986). In the *Johnson* case, the IRS issued a press release with information about the taxpayer under investigation. The Southern District of Texas found that disclosing the taxpayer's age, address, and the suspicion that he had altered documents and claimed false business deductions on his tax returns, were improper under § 6103. In the case at bar, Defendant disclosed the same type of information to many of Plaintiff's clients. Although the disclosures were to a limited number of people, such does not diminish the severity of the act.

6. "A reasonable IRS agent can be expected to know the provisions of sections 6103 ... [which] may be further clarified by IRS regulations and other IRS interpretations." *Huckaby v. United States Dept. of Treasury, I.R.S.*, 794 F.2d 1041, 1049 (5th Cir.1986). Plave has been a Special Agent with the IRS since 1966 and is obviously familiar with appropriate standards of conduct during a tax investigation. Therefore, the statements referred to in paragraph 5. of this Court's *Findings of Fact* were in violation of the disclosure statute.

7. Defendant claims that all of the disclosures in his letters, discussed in paragraph 3. of the *Findings of Fact*, were necessary to conduct an effective investigation. "[T]he questions are whether the disclosures are 'necessary' to obtain the information sought and whether the information sought is 'otherwise reasonably available.'" *Barrett v. United States*, 795 F.2d 446, 451 (5th Cir.1986). This Court agrees with Defendant that some contact with Plaintiff's clients was necessary, as Heller's tax information was not completely available. Plave, however, did have access to Plaintiff's bank statements. To the extent that third-party communications were necessary, Plave was required to abstain

from improper disclosures. The testimony did not demonstrate the need for disclosing any more than Defendant's name, occupation and request. All statements by Plave, ranging from his conducting a "criminal investigation of Daniel Neal Heller" to characterizing Plaintiff as "unscrupulous," were unnecessary and improper under § 6103. This Court finds that such disclosures neither represent the quality of overzealousness or tenacity, but rather depict a lack of integrity on the part of the government. Such careless conduct must be reprimanded. The responsibilities of the IRS are gravely important and should not be tainted by irresponsible comments. IRS agents must bear responsibility for improper disclosures. Section 6103 acts as a restraint on unsuitable behavior among IRS agents and mandates the protection of our government's rectitude.

8. This Court finds thirteen (13) improper disclosures, listed in paragraphs 3. and 5. under *Findings of Fact*, including seven (7) letters and six (6) verbal statements. "Section 7217 provides for a minimum actual damage amount of $1,000 'with respect to each instance of [an] unauthorized disclosure....'" *Johnson*, 640 F.Supp. at 1135, 1136. Plaintiff is, therefore, awarded $1,000 per improper disclosure, totalling $13,000.00

9. This Court finds that none of the disclosures were "willful and *grossly* negligent," so as to warrant an award of punitive damages under 26 U.S.C. § 7431(c)(1)(B) (emphasis added).

Based upon the foregoing *Findings of Fact and Conclusions of Law*, it is hereby

ORDERED AND ADJUDGED that judgment is entered in favor of Plaintiff, Daniel Neal Heller and against Defendant, Lawrence S. Plave, in the amount of $13,000.00.