**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2363**

THE NATIONAL ORGANIZATION FOR MARRIAGE, INC.,

Plaintiff - Appellant,

v.

THE UNITED STATES OF AMERICA, Internal Revenue Service,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Senior District Judge. (1:13-cv-01225-JCC-IDD)

Argued: September 16, 2015          Decided: December 2, 2015

Before GREGORY, AGEE, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Gregory and Judge Agee joined.

**ARGUED**: William Earl Davis, PUBLIC INTEREST LEGAL FOUNDATION, Plainfield, Indiana, for Appellant. Ivan C. Dale, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF**: Kaylan L. Phillips, Noel H. Johnson, Joseph A. Vanderhulst, ACTRIGHT LEGAL FOUNDATION, Plainfield, Indiana; John C. Eastman, CENTER FOR CONSTITUTIONAL JURISPRUDENCE, Orange, California; Jason Torchinsky, Shawn Toomey Sheehy, HOLTZMAN VOGEL JOSEFIAK, PLLC, Warrenton, Virginia, for Appellant. Caroline D. Ciraolo, Acting Assistant Attorney General, Richard Farber, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana J. Boente, United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

DIAZ, Circuit Judge:

The National Organization for Marriage ("NOM") appeals the district court's denial of its motion under 26 U.S.C. § 7431(c)(3) to collect attorneys' fees from the Internal Revenue Service. NOM contends that the district court abused its discretion by determining that NOM was not a "prevailing party" under 26 U.S.C. § 7430(c)(4)(A) because (1) it did not "substantially prevail[] [in litigation against the IRS] with respect to the amount in controversy, or . . . the most significant . . . issues presented," and, alternatively, (2) the government's position in the litigation was "substantially justified" under § 7430(c)(4)(B). We agree with the district court that the government's litigation position was "substantially justified," which, by itself, is sufficient to find that NOM was not a "prevailing party" under the statute. Consequently, we affirm.

I.

A.

NOM is a tax-exempt, nonprofit organization whose mission is "to protect marriage and the faith communities that sustain it across the United States." J.A. 11. Each year, NOM must file IRS Form 990, which includes the names, addresses, and contribution amounts of donors who gave $5,000 or more during

3

the year.  26 U.S.C. § 6033(a)(1); 26 C.F.R. § 1.6033-2(a)(2). While federal law requires the IRS to make information in a tax-exempt organization's return available to the public, the IRS must redact the names and addresses of donors listed in a Form 990 filing.  26 U.S.C. § 6104(b); 26 C.F.R. § 301.6104(b)-1(b), (d).

Despite these rules, an IRS clerk released NOM's unredacted donor list from its 2008 filing after receiving a request in January 2011 for NOM's publicly available tax information.  The IRS destroyed the request after forty-five days per its standard policy.  Consequently, little is known about it other than that it was made by a Matthew Meisel, who identified himself as a member of the media.

Meisel gave NOM's Form 990 information to the Human Rights Campaign (the "HRC")—an ideological opponent of NOM.  The HRC then forwarded the information to the Huffington Post.  Both the HRC and the Huffington Post published the donor list online.

After discovering its unredacted donor list on the Internet, NOM sought to mitigate any potential harm.  It undertook its own investigation of the unauthorized disclosure and attempted to have its tax-return information removed from the HRC's and the Huffington Post's websites.  Additionally, it urged the Treasury Inspector General for Tax Administration as well as certain members of Congress to investigate the

4

disclosure. NOM also was forced to mount a defense to a complaint filed with California's Fair Political Practices Commission by a man named Fred Karger. The complaint, which alleged violations of California election law, referenced the unredacted information contained in NOM's 2008 Form 990.

B.

NOM filed suit against the IRS "seeking damages pursuant to 26 U.S.C. § 7431 for unlawful inspection and disclosure of confidential tax information by agents of the [IRS] in violation of 26 U.S.C. § 6103." J.A. 9. NOM sought statutory damages, actual damages, punitive damages due to "willful and grossly negligent disclosures and inspections of NOM's return and return information," and costs and attorneys' fees under § 7431(c). J.A. 31–32.

In its answer, the government admitted that on one occasion—the response to Meisel's request—it inadvertently disclosed an unredacted copy of NOM's Form 990 information. The government conceded this act entitled NOM to a single recovery of statutory damages. It denied, however, that NOM was entitled to actual or punitive damages, costs, or attorneys' fees.

After a period of discovery, the government moved for summary judgment. It argued that NOM failed to present sufficient evidence that (1) the IRS conducted any unauthorized inspections, (2) NOM was entitled to punitive damages because

5

the IRS's disclosure was willful or grossly negligent, and (3) NOM was entitled to actual damages.[1]  With regard to this final contention, the government maintained that the unauthorized disclosure was neither the "but-for" nor proximate cause of NOM's alleged damages.  Additionally, the government argued that NOM mitigated its claims for actual damages through aggressive and successful fundraising.

The district court granted partial summary judgment to the government.  As to NOM's punitive damages claim, the court found that NOM failed to present sufficient evidence showing that the IRS acted willfully or with gross negligence.  The court also ruled for the government on NOM's claim of unlawful inspection because NOM failed to present sufficient evidence to carry its burden.

The district court, however, denied summary judgment on NOM's claim for actual damages.  The court explained that it

---

[1] By this point in the litigation, NOM's basis for actual damages, and consequently the amount it sought to recover, had changed.  NOM's complaint sought "actual damages according to proof," and specifically identified lost donations in the amount of $50,000 as well as damages based on defending the Karger complaint in California in the amount of $10,500.  J.A. 31–32.  Later in the litigation, however, NOM elected to withdraw its claim for the $50,000 in lost donations.  NOM then added $2,000 to the damages it sought for defending the Karger complaint and $46,086.37 in additional legal expenses arising from NOM's efforts to prevent the further dissemination of its donor information.  This brought the total revised amount of claimed actual damages to $58,586.37.

"ha[d] little trouble concluding that the unlawful disclosure . . . was the actual cause of [NOM's] claimed damages." Nat'l Org. for Marriage, Inc. v. United States, 24 F. Supp. 3d 518, 529 (E.D. Va. 2014). As for proximate cause, the court noted that the question was "a closer call" given that "proximate cause is a 'flexible concept' not easily defined or implemented." Id. at 530 (quoting Paroline v. United States, 134 S. Ct. 1710, 1719 (2014)). Nevertheless, the court explained, "[t]he independent actions of Meisel, the HRC, and others cannot immunize the IRS from responsibility in this case," and therefore "[t]he fact that a third-party was involved in [the] chain of events does not foreclose finding proximate cause on the[] facts [presented]." Id. at 531. Finally, the district court rejected the government's mitigation argument because there was "a continuing factual dispute as to whether the cited contributions were caused by the disclosure, and if so, in what amount." Id. at 532.

The parties subsequently entered into a consent judgment. The government agreed to pay NOM $50,000 to resolve its claims for actual damages and costs. Additionally, the parties agreed that the court would retain jurisdiction so NOM could seek attorneys' fees under § 7431(c)(3).

NOM moved for $691,025.05 in attorneys' fees. The district court denied the motion. This appeal followed.

Under § 7431(a)(1), a taxpayer may bring suit against the United States if an "employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103."[2] Reasonable attorneys' fees are potentially available under § 7431(c)(3), but "if the defendant is the United States, reasonable attorneys fees may be awarded only if the plaintiff is the prevailing party (as determined under section 7430(c)(4))." Section 7430(c)(4)(B)(i) mandates that if the government is the defendant, the plaintiff "shall not be treated as the prevailing party . . . if the United States establishes that [its] position . . . in the proceeding was substantially justified."

The district court held that the government's position was substantially justified under § 7430(c)(4)(B). The court reasoned that the government "reasonably contested NOM's unfounded conspiracy allegations, and unfounded willful disclosure and inspection allegations that would have supported a claim for punitive damages if properly proven." Nat'l Org. for Marriage, Inc. v. United States, No. 13cv1225, 2014 WL

---

[2] 26 U.S.C. § 6103 generally provides that tax-return information should be kept confidential. It is undisputed that by releasing NOM's unredacted Form 990, the IRS violated § 6103.

5320170, at *6 (E.D. Va. Oct. 16, 2014). The court did not comment, however, on whether the government's position respecting actual damages was substantially justified.

NOM seizes on the district court's silence on this issue, arguing that it amounts to an abuse of discretion.[3] NOM also argues that once the government's contention on actual damages is taken into account, it becomes clear that the government's position was not substantially justified. We will assume the district court abused its discretion as NOM contends. Therefore, we turn directly to whether the government's position in this litigation was substantially justified in light of its arguments regarding actual damages.

The government's litigation position is "substantially justified" if it has a "reasonable basis in law and fact," United States v. 515 Granby, LLC, 736 F.3d 309, 315 (4th Cir. 2013) (quoting Cody v. Caterisano, 631 F.3d 136, 141 (4th Cir. 2011)), or if it is "justified to a degree that could satisfy a reasonable person," Pierce v. Underwood, 487 U.S. 552, 565 (1988).[4] It is not necessarily enough that the government's

---

[3] We review the district court's denial of attorneys' fees for abuse of discretion. Bowles v. United States, 947 F.2d 91, 94 (4th Cir. 1991).

[4] A number of the cases we cite in this opinion, including Granby and Pierce, deal with a provision analogous to § 7430(c)(4)(B) in the Equal Access to Justice Act ("EAJA"), 28 (Continued)

9

position is "more than merely undeserving of sanctions for frivolousness" to qualify as "substantially justified." Granby, 736 F.3d at 315 (quoting Pierce, 487 U.S. at 566). On the other hand, the government's position need not necessarily carry the day. Pierce, 487 U.S. at 569. The burden is on the government to show—based on the totality of the circumstances—that its position was substantially justified. § 7430(c)(4)(B)(i); Bowles, 947 F.2d at 94 (noting that "'all the facts and circumstances surrounding the proceeding[]' provide guidance to the court" (quoting In re Testimony of Arthur Andersen & Co., 832 F.2d 1057, 1060 (8th Cir. 1987))).

To assess whether the government's position was substantially justified, we first consider "the available 'objective indicia' of the strength of the Government's position." United States v. Paisley, 957 F.2d 1161, 1166 (4th Cir. 1992) (citing Pierce, 487 U.S. at 568–71). The pertinent indicia will change depending on the case, but as relevant here

---

U.S.C. § 2412(d)(1)(A). We have said that the EAJA's definition of "substantially justified" is "essentially the same" as in § 7430. Bowles, 947 F.2d at 94; see also Kenagy v. United States, 942 F.2d 459, 464 (8th Cir. 1991) ("The 'not substantially justified' standard was copied by Congress from the EAJA provisions. Thus, where the wording is consistent, courts read the EAJA and § 7430 in harmony."). Consequently, we rely on judicial interpretations of the EAJA's "substantially justified" language.

they include "the terms of the settlement agreement that ended the underlying litigation, the stage at which the merits were thereby decided, and the views of other courts on the strength, hence reasonableness, of the Government's position." Id. (citing Pierce, 487 U.S. at 568–71).

The fact that the parties reached a settlement cannot alone establish the unreasonableness of the government's position. Pierce, 487 U.S. at 568. Additionally, the fact that the government's position survives or dies during the pleading stage—or even makes it all the way to the Supreme Court—does not conclusively establish the strength or weakness of the position. See id. at 568-69 ("At least where, as here, the dispute centers upon questions of law rather than fact, summary disposition proves only that the district judge was efficient."); Paisley, 957 F.2d at 1166 (concluding that a final merits decision before the Supreme Court could not establish the strength of the prevailing position because "unfounded claims sometimes, for a variety of reasons, survive beyond their just desserts"); see also Pierce, 487 U.S. at 569 ("[The government] could take a position that is substantially justified, yet lose.").

If the "objective indicia" are inconclusive, we "turn[] to an independent assessment of the merits of the Government's position." Paisley, 957 F.2d at 1166. Here too, "merits decisions in a litigation, whether intermediate or final,

11

cannot, standing alone, determine the substantial justification issue." Id. at 1167. Nevertheless, "they—and more critically their rationales—are the most powerful available indicators" of whether the government's position was "substantially justified." Id.

Moving to the first step of the analysis, we consider three indicia bearing on the reasonableness of the government's position. The first two are (1) the fact that the parties ultimately settled the actual damages claim, and (2) the fact that the claim survived summary judgment. These are insufficient to carry the day without more. The third objective factor that NOM asks us to consider is the District of Nebraska's decision in Jones v. United States, 9 F. Supp. 2d 1119 (D. Neb. 1998). See Appellant's Br. at 26. Specifically, NOM argues that Jones demonstrates that third parties abusing confidential tax-return information is a reasonably foreseeable consequence of an unauthorized disclosure. Id. at 33–34.

We find NOM's reliance on Jones unavailing. First, one other district court's view is not enough to establish or refute the reasonableness of the government's position. See Pierce, 487 U.S. at 569 ("Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified."); see also § 7430(c)(4)(B)(iii) (directing that courts "shall take into

12

account whether the United States has lost in <u>courts of appeal</u> <u>for other circuits</u> on substantially similar issues" in undertaking the substantial justification inquiry (emphasis added)).

Second, <u>Jones</u> involves distinguishable facts, rendering it a weak objective indicator of the merits of the government's position in this case. In <u>Jones</u>, an IRS agent investigating criminal violations unlawfully disclosed to a confidential informant that the government planned to execute a search warrant at the plaintiffs' business. <u>Jones</u>, 9 F. Supp. 2d at 1123. The confidential informant then told the media, resulting in videotaped news coverage of the day-long execution of the warrant. <u>Id.</u> at 1124–25.

The court held that the IRS agent's disclosure proximately caused the damage resulting from the media's coverage because (1) the IRS agent should have known that even "the suggestion of criminal activity" can have devastating consequences for the person or business implicated, <u>id.</u> at 1143–44 (quoting <u>Diamond</u> <u>v. United States</u>, 944 F.2d 431, 434 (8th Cir. 1991)), and (2) based on his personal knowledge regarding the informant and the plaintiffs, the IRS agent should have foreseen that the confidential informant "harbored bad feelings" for the plaintiffs and therefore might seek to harm them, <u>id.</u>

13

In this case, in contrast, there is no evidence that the IRS knew whether Meisel held any ill will toward NOM. Nor did it have any reason to think that the disclosure of NOM's tax-return information would implicate NOM criminally. In short, the IRS did not have as clear of a reason as in Jones to believe disclosure would cause NOM damage. Consequently, we find the objective indicia inconclusive.

We next conduct an independent assessment of the merits of the government's position with respect to actual damages. Our analysis of proximate cause in this case leads us to conclude that the government's position was substantially justified. As the Supreme Court recently noted, proximate cause "defies easy summary" and is a "flexible concept." Paroline, 134 S. Ct. at 1719 (quoting Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 654 (2008)). We think it reasonable for the government to have argued that the third-party intervening conduct of Meisel, the Huffington Post, and the HRC broke the chain of proximate causation. While this contention was not a winner at the end of the day, it need not be to qualify as "substantially justified." See Pierce, 487 U.S. at 569 ("[The government] could take a position that is substantially justified, yet lose."); see also Kaffenberger v. United States, 314 F.3d 944, 960 (8th Cir. 2003) ("[D]isputes that preclude summary judgment do not establish

that the moving party's position is not substantially justified.").

The district court's ruling on proximate cause further confirms that the government's position was substantially justified. While the court easily disposed of the government's "but-for" causation argument regarding actual damages, it found the question of proximate causation to be "a closer call." Nat'l Org. for Marriage, 24 F. Supp. 3d at 529–30. Thus, like us, the district court identified this issue as a more difficult legal question, suggesting that the government's litigation position was substantially justified.

Finally, the context in which the government asserted its defense respecting actual damages further bolsters our conclusion. Because we assess the reasonableness of the government's position in light of the totality of the circumstances, we must take care not to view the government's position on a single issue in a vacuum.

In this litigation, NOM sought statutory, actual, and punitive damages. We conclude that the government adopted a reasonable strategy in conceding statutory damages, but challenging the existence and amount of both actual and punitive damages. Conceding actual damages prematurely could have harmed the government's position later if NOM had been able to submit

15

evidence enabling it to proceed on the punitive damages issue.[5] In addition, prior to the district court's ruling on summary judgment, NOM added and subtracted different categories and sums of actual damages to its calculation, thus keeping the type and extent of actual damages in flux. See supra n.1. Moreover, NOM bore the burden of proving any actual damages. In light of these considerations, we cannot say that the government acted unreasonably prior to the summary judgment stage of the litigation by waiting to see what NOM's evidence was and then challenging its sufficiency.

In sum, we conclude that the government's position was substantially justified. As a result, NOM is not a "prevailing party" and is therefore not entitled to attorneys' fees.


## III.

For the reasons given, we affirm the judgment of the district court.

AFFIRMED

---

[5] Of course, the government ultimately prevailed on NOM's unfounded claim for punitive damages.

16