William F. FLIPPO, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. ST–C–86–145.

United States District Court, W.D. North Carolina, Statesville Division.

July 22, 1987.

Thomas L. Kummer, Winston-Salem, N.C., for plaintiff.

Betsey E. Burke, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, District Judge.

The Plaintiff, William F. Flippo, Jr. seeks the recovery of monetary damages against the United States of America pursuant to 26 U.S.C.A. Section 7431 for alleged violations of 26 U.S.C.A. Section 6103. He alleges that the United States through its Revenue Agent Hoy A. Moose made improper disclosure of tax return information and as a result thereof he has sustained damages. The United States denies any violation of the statute and contends that the Plaintiff has suffered no damages. The Court tried the case at the June 1987 term in Statesville and after full consideration of the pleadings, evidence, briefs and arguments now enters its findings and conclusions.

On September 17, 1984, the Plaintiff, William F. Flippo, Jr. was assessed with a penalty under 26 U.S.C.A. Section 6672 arising out of his association with two Virginia corporations, Flippos Co., Inc. and F. & D. Inc. and his failure to pay over to the United States employee withholding taxes. The Collection Division of the Internal Revenue Service in Richmond, Virginia met and corresponded with the Plaintiff in an effort to collect this liability. When the Revenue Service learned that Mr. Flippo had moved to Florida the matter was transferred to the Collection Division in that State and assigned to Revenue Officer, Ann McKnight. When the Plaintiff failed to pay the tax assessment, a Notice of Federal Tax Lien was filed on April 9, 1985 in Palm Beach County, Florida. Sometime thereafter the Plaintiff's authorized representative, an accountant in Florida, advised Officer McKnight that Mr. Flippo had moved from Florida to Hickory, North Carolina. The accountant provided her with an address and telephone number for the Plaintiff in North Carolina.

In November of 1985 Officer McKnight transferred the matter to the Collection Division in North Carolina. This procedure was accomplished by sending the collection matter through the Internal Revenue Service Center in Chambee, Georgia which served the Florida district, to the Internal Revenue Service Center in Memphis, Tennessee, which served the North Carolina district.

On January 7, 1986 the Plaintiff paid the tax liability in question in Florida and a Release of the Notice of Federal Tax Lien which had been filed in Florida was issued. Apparently, through some failure of the record keeping system the payment and release did not properly follow the transfer of the matter to North Carolina. In June of 1986, the collection matter was assigned to Revenue Officer Hoy A. Moose in the Collection Division of the Internal Revenue Service in Hickory, North Carolina. Officer Moose checked the computer transcript upon being assigned this collection which showed that the tax liability in question had not been paid. The transcript also showed unpaid income tax assessments against the Plaintiff for 1981 and 1982 in the sum of $30,789.88 which the Plaintiff concedes were not paid until December, 1986.

Upon receipt of the collection matter Officer Moose made an effort to contact the Plaintiff at the Hickory telephone number provided by the accountant but the party answering the telephone stated that he did not know William Flippo. He then contacted Directory Assistance but found no listing for Mr. Flippo. Officer Moose then sent out address verification forms to the respective post offices and the postal records revealed that P.O. Box 6061, Bethlehem, North Carolina 28603 or Route 2 (Sandy Ridge Road Exit) Hickory, North Carolina 28601 and P.O. Box 793 Hobe Sound, Florida 33455–0793 were current addresses for William Flippo. On July 1, 1986 Officer Moose sent a form letter to William Flippo advising of an appointment for July 7, 1986 at the Internal Revenue Service Office in Hickory relative to the tax liability in question here. The letter was not returned by the Postal Service and Mr. Flippo did not appear or request another date for the appointment as suggested in the letter. After Mr. Flippo did not appear for the July 7, 1986 appointment Officer Moose sent a Notice of Intent to Levy to William Flippo by certified mail to the addresses in Florida and North Carolina. The letter sent to the Florida address was returned unclaimed by the postal authorities but the certified letter sent to the North Carolina address was signed for and claimed by someone signing William Flippo's name. In this letter Mr. Flippo was advised that he should contact Officer Moose if the taxes had been paid. The Plaintiff testified that he did not receive either of these letters and did not appear at or contact the Revenue Officer in Hickory.

In a further effort to locate Mr. Flippo Mr. Moose testified that he contacted Bessie Flippo, the Plaintiff's mother by telephone in Florida and Steven Brackett in Hickory, North Carolina. Mr. Moose testified that he knew that Mr. Brackett, an attorney, had represented Mr. Flippo in a previous tax matter and rented a house from Flippo. Moose inquired as to the whereabouts of Flippo but no mention of the tax liability was made to either the mother or the attorney. Mrs. Flippo merely stated that he was not there and Mr. Brackett did not know Flippo's address but thought he was living in Virginia.

Revenue Officer Moose, having knowledge of Mr. Flippo's other tax liability and that he owned real estate in North Carolina filed a Notice of Federal Tax Lien in Catawba County, North Carolina on June 20, 1986 identifying the tax liability in question here as unpaid.

After identifying a bank account in Flippo's name with the Bank of New York, Officer Moose served a Notice of Levy upon that account on July 29, 1986. On August 15, 1986 the bank advised that it did not have any liquid assets of Mr. Flippo at that time. Officer Moose contacted the bank again on August 20, 1986 about the effect of the levy on future deposits and was advised that the bank had a release of the federal tax lien. On September 18, 1986 the New York bank sent a copy of the release of the tax lien in Florida to Officer Moose. Upon receipt of the document Officer Moose verified the payment of the tax liability in question and promptly released the Notice of Tax Lien in Catawba County, North Carolina.

The evidence discloses that Revenue Officer Moose took all the proper steps necessary to contact the taxpayer, Mr. Flippo, prior to the collection action and acted

promptly to release the lien and levy once he had determined that the tax liability was satisfied. Somewhere along the way the system failed when the fact that the lien had been paid in Florida did not reach the Officer in North Carolina prior to the collection efforts resulting in the filing of the lien and levy. There is no evidence that Officer Moose acted intentionally or negligently to disclose "return information" prohibited by the statute.

The question which the Court must determine is whether under these facts the United States has violated the provisions of Section 6103 and if so what damages, if any, the Plaintiff has sustained as a result of such violation.

The Plaintiff contends that the Defendant, by filing a Notice of Federal Tax Lien and serving a Notice of Levy, violated Section 6103 and he is entitled to recover actual damages in the sum of $246,000.00, or at least, the sum of $1,000.00 for each disclosure as provided in Section 7431. The Defendant contends that there has been no disclosure of tax return information of the Plaintiff within the meaning of Section 6103 and that if the Court should find a violation of the statute the Plaintiff offered no credible evidence of any actual damages.

26 U.S.C.A. Section 7431(a)(1) provides that:

If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C.A. Section 6103 provides in part:

Returns and return information shall be confidential, and except as authorized by this title—

(1) No officer or employee of the United States ... shall disclose any return or return information obtained by him in any manner in connection with his service as such officer or an employee .or

otherwise or under the provisions of this section.

Title 26 contains many exceptions to the probibition against disclosure of "returns and return information" including the information required to file proper notices of tax liens and to issue a levy and distraint upon any property or property rights belonging to the taxpayer. 26 U.S.C.A. Sections 6321, 6322, 6323 and 6331. The case at bar deals with the disclosure of certain "return information" through a notice of a tax lien filed in the Register of Deeds office in Catawba County, North Carolina and a notice of a tax assessment mailed to a bank in New York. Both acts are not only permitted but required by the statutes and the Regulations of the Internal Revenue Service when tax assessments have been made and unpaid. The problem here is that the taxes and assessments had been paid prior to the notices and disclosures but the records of the Revenue Service failed to keep up with the collection efforts.

■ In order for the Plaintiff to prevail under Section 7431(a)(1) he must show by a preponderance of the evidence (1) that the disclosure was unauthorized, (2) that the disclosure was made "knowingly or by reason of negligence" and (3) that the disclosure was in violation of Section 6103. We now examine the evidence and the law to determine whether the Plaintiff has met his burden.

Since the tax liability had been satisfied and paid the notices of lien and assessment would not be authorized under the law or the Regulations.

■ The evidence is not sufficient to show that Officer Moose acted knowingly or by reason of negligence in filing the notice of lien and the assessment. He made every reasonable effort to locate the Plaintiff at all the addresses listed by the taxpayer and his representative, but the Plaintiff either did not receive the notices or failed or refused to respond. Not only did Mr. Moose make a reasonable effort to locate Mr. Flippo he checked the computer transcript to determine whether the tax liability had been satisfied before making any effort to contact the taxpayer or to

institute collection procedures. Despite the fact that the evidence does not show negligence on the part of Officer Moose, information that Mr. Flippo owed taxes which were unpaid was released or disclosed by the notice of lien and the filing of the assessment.

The question which must now be determined is whether under the facts of this case there has been a violation of Section 6103.

■ After a careful reading of Section 6103, the exceptions to the statute and the legislative history of 6103 and 7431 the Court concludes that the actions taken by Revenue Officer Moose are outside the scope of Section 6103. Congress was concerned with the many uses and abuses to which information gathered by the Internal Revenue Service was being put. It was recognized by Congress that our voluntary assessment system of tax action is in large measure dependent upon the realization of a taxpayer's expectation that the information required of him for this purpose would be kept confidential. Thus Congress sought to balance this interest against the legitimate need of the Government to use the information for other purposes. See Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, 94th Cong., 2nd Sess. at 314–315 [1976–3 Cum.Bull. (Vol. 2) 326–327].

It is clear from the legislative history surrounding the enactment of the Sections in issue here that Congress was seeking to protect a taxpayer's "reasonable expectation of privacy." The committee report specifically addressed to Section 7217 (now 7431) states that:

"The committee also decided to establish a civil remedy for any taxpayer damaged by an unlawful disclosure of returns or return information."

■ The report pointed out that because of the difficulty in establishing in monetary terms the damages sustained by a taxpayer as a result of the *"invasion of privacy caused by an unlawful disclosure* of his return or return information," it was decided to provide for liquidated damages of not less than $1,000.00 for each disclosure. In sum, Sections 6103 and 7431 respectively, provide a taxpayer with the protection of his "reasonable expectation of privacy" and a cause of action for an unauthorized or unlawful invasion of that privacy.

■ It therefore appears that Section 7431 is not intended to interfere with the collection actions to be taken by revenue officers in performing their tasks to collect delinquent taxes. Here, the revenue officer was engaged in his routine duties to collect delinquent taxes, *albeit* under the mistaken impression the taxes at issue were not paid. Here, "reasonable expectation of privacy" is not an issue as any reasonable expectation of the Plaintiff was protected by internal procedures pursuant to the collection activity here *authorized* by the Internal Revenue Code and thereby *excepted* from Section 6103.

Congress did not intend to impede the ability of the Internal Revenue Service to collect tax liabilities. The purpose of Section 7431 is fully met by the express terms of Section 6103 which specifically restricts its applicability to disclosures which are not otherwise authorized under the Internal Revenue Code.

This interpretation strikes a balance between the "reasonable expectation of privacy" and the Government's legitimate interest in disclosing tax return information as necessary to effectuate specified tax administration functions. As the legislative history indicates, the striking of such a balance was precisely what Congress was attempting to do in enacting the disclosure provisions. See Staff of Joint Comm.Int. Rev.Tax, 94th Cong., 2nd Sess., General Explanation of the Tax Reform Act of 1976, at 314–315, 1976–3 C.B. (Vol. 2) 326–327.

■ The Court holds as a matter of law that the evidence that Revenue Officer Moose made telephone calls to the Plaintiff's mother, Mrs. Bessie Flippo and the Plaintiff's former counsel, Steve Brackett identifying himself as a revenue officer and inquiring as to the whereabout of William F. Flippo were not improper disclosures

under the statute in question. Section 6103(k)(4) expressly excepts disclosure of information necessary to obtain information not otherwise reasonably available to the Revenue Officer.

There has been no negligent or intentional disclosure of tax return information either by the filing of the Notice of Lien or service of the Notice of Levy. As a threshold matter the validity of the underlying lien and levy is wholly irrelevant to the disclosure issue.

The case at bar is analogous to the case of *Timmerman et al. v. Swenson et al.,* 79–2 U.S.T.C. ¶ 9588 (D.Minn.1979), wherein a revenue officer served a notice of levy upon a bank where the taxpayer did not have an account. The court held this was a ministerial error which did not give rise to an action for unauthorized disclosure. In its holding, the court noted that the taxpayers could not be found and that the only way the Internal Revenue Service could determine whether the bank in question had property belonging to the taxpayer was to serve the levy at issue, stating that the "IRS did not disclose the tax liability knowing the disclosure was unlawful." The *Timmerman* court concluded that Section 6103(k)(6) authorizes IRS employees to disclose "the identity of taxpayers and the nature and extent of their tax liability to third parties in order ... to locate assets in which the taxpayer has an interest ...," and held the disclosure was not unlawful. The revenue officers in *Timmerman* and the case at bar were performing routine collection duties and neither of them had any idea they were disclosing any information which could be considered as tax return information. This Court concludes that the collection activities of Revenue Officer Moose were not entered into with the requisite negligent or knowing manner which would give the Plaintiff a claim under Section 7431 of the Code.

Assuming *arguendo* that there was an unauthorized disclosure of "return information" in a knowing or negligent manner as alleged, the Plaintiff produced no evidence to show that the actions were in bad faith. The statute under which this action was brought provides that

(b) "No liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103."

The language of this subsection indicates that good faith is a defense under Section 7431 if the unauthorized disclosure resulted from an erroneous interpretation of Section 6103. Thus, if the officer or employee did believe that the disclosure was authorized by some subsection of Section 6103 or another provision of the Internal Revenue Code, the threshold requirement of interpreting Section 6103 of the Code will be met, and the good faith defense will be available. Revenue Officer Moose testified, and further established by his actions as found by the Court, that he believed he was outside of the scope of Section 6103 in that his actions were authorized by Code Sections 6303 and 6331, (authorizing the issuance and service of liens and levies for the collection of delinquent taxes). The United States is entitled to assert the good faith defense and the Court finds and concludes that such defense has been established in this cause and the Plaintiff is not entitled to recover. *Davidson v. Brady,* 732 F.2d 552 (6th Cir.1984).

The Court finds and concludes that the Plaintiff is not entitled to recover any sum of damages or costs in this cause and the action will be dismissed. A judgment in accordance with these findings and conclusions will be entered simultaneously herewith.