952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Duane COPLIN and Patricia Coplin, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-1338.
 United States Court of Appeals, Sixth Circuit.
 Dec. 17, 1991.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Taxpayers Duane Coplin and Patricia Coplin sued to have certain government tax liens on their property declared invalid pursuant to 28 U.S.C. § 2410. They also sought money damages against the United States and Patricia Wilker for alleged wrongful disclosures of income tax information, pursuant to 26 U.S.C. § 7213 and § 7431. After a bench trial, the district court ruled in favor of the United States. We affirm.
 
 
 2
 * Duane Coplin ("taxpayer")[1] had been in the business of preparing income tax returns as an accountant for over twenty years and is the sole source of support for himself and his wife, Patricia Coplin. Taxpayer currently makes a living by preparing federal income tax returns on behalf of Coplin & Associates. Coplin & Associates, a corporation operated by taxpayer's son, is the successor to Coplin & Baughman, Inc. and Coplin Business Services, Inc. ("CBS"), a defunct corporation that was owned and controlled by taxpayers. Taxpayer testified that he worked as an accountant for Coplin & Associates as a self-employed consultant, not as an employee. Taxpayers have not filed an income tax return since 1981.
 
 
 3
 At the time taxpayers filed this lawsuit, the Internal Revenue Service ("IRS") had made nine different assessment against one or both of the taxpayers. When the IRS made assessments against the taxpayers, it would mail to the taxpayers at their last known address notices of those assessments and demands of payment. On January 13, 1983; December 28, 1987; April 17, 1989; and September 29, 1989, the IRS filed nine notices of liens against all of the taxpayers' property. These notices listed the taxpayers' name, address, social security number and amount then due for each assessment. Three of the liens were against both taxpayers for unpaid assessments on their joint income tax returns in 1978, 1979, and 1981. Two liens were against taxpayer with respect to assessments made in March 1984 and September 1987 pursuant to 26 U.S.C. § 6672(a), as a "person responsible" for taxes withheld from the wages of the employees of CBS. The IRS also claimed four liens against the taxpayer for return preparer penalties for two assessments made against Coplin in 1983 and two in 1985, pursuant to 26 U.S.C. § 6694.
 
 
 4
 The IRS had attempted to collect taxes owed by taxpayers for several years, beginning in 1980. These efforts all failed. In September 1987, Internal Revenue Officer Patricia Wilker was assigned to collect the taxpayers' unpaid taxes. Familiar with the IRS's past efforts with the taxpayers, Wilker tried many different methods including directly asking taxpayers to pay up. The taxpayers refused to provide any information from which Wilker could locate assets or sources of income from which she could collect unpaid taxes. After being unable to locate any property registered in taxpayers' name that had not already been foreclosed upon by a bank and after the taxpayers' continued refusal to cooperate, Wilker filed tax levies pursuant to 26 U.S.C. § 6331.
 
 
 5
 Upon receiving a final notice of intention to levy, the taxpayers responded by letter that they were not liable to the United States for any taxes. In a subsequent interview between Wilker and Coplin to determine if Coplin was liable as a "responsible person" for taxes withheld from employees of CBS, Coplin first denied he was employed, but then stated that he was self-employed, though he refused to identify his clients for whom he prepared tax returns.
 
 
 6
 Wilker then asked the Examination Division of the IRS to provide her with a list of persons whose income tax returns were prepared by Coplin, or by CBS before it liquidated in 1987. Wilker served Notices of Levy upon the 374 persons on the list on January 27, 1989 to collect the individual liabilities of the taxpayer and again on February 10, 1989, to collect the joint liabilities of both taxpayers.
 
 
 7
 On March 22, 1989, taxpayers filed a quiet title action, alleging that the United States had filed a lien against unspecified property and that the lien was invalid because no lawful and proper assessment had been made as required by 26 U.S.C. § 6203. Taxpayers also alleged unlawful disclosure of their income tax returns, in violation of 26 U.S.C. § 6103, and sought to invalidate the lien and collect money damages pursuant to 26 U.S.C. § 7431.
 
 
 8
 The district court entered judgment for the United States, holding that the IRS levy notices and demands for payments were properly mailed to taxpayers' last known address and that, therefore, the government liens were valid. The court also held that the disclosures of the taxpayers' income tax returns were made in an attempt to collect taxes owed by the taxpayers and were therefore authorized pursuant to 26 U.S.C. § 6103(k)(6).
 
 II
 
 9
 On appeal, the government argues that the district court lacked jurisdiction to hear the taxpayers' quiet title action. The taxpayers, in Count One of their complaint, asserted a "quiet title" action under § 28 U.S.C. § 2410, challenging the validity of federal tax liens filed against them. Under § 2410, which provides a limited waiver of sovereign immunity, the United States may be named a party in a civil suit "to quiet title to ... real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410.
 
 
 10
 The United States argues that the complaint fails to identify any specific piece of property to which the tax liens were attached and as to which a quiet title action could lie, in violation of the requirements of 28 U.S.C. § 2410. The United States maintains that under § 2410, a quiet title action can not stand without a taxpayer claiming an interest in a special parcel of property and that § 2410 was not designed as a way for taxpayers to make procedural challenges to general tax liens.
 
 
 11
 However, as the taxpayers point out, the lien filed by the IRS provided that "there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer ..." The United States is claiming a lien on everything the taxpayers own and the lien is thus defined in the sense that it applies to the taxpayers' personal and real property. In response, the taxpayers seek to quiet title to everything on which the United States claims a lien, which is everything the taxpayers own. It is somewhat disingenuous and illogical for the government to assert that it can to place a lien on everything the taxpayers own, even when the government is unclear what "everything" entails, while at the same time demanding that the taxpayers can bring a quiet title action only if their defense is more specific than the lien itself. The taxpayers met the "real or personal property" requirements of 28 U.S.C. § 2410 and the district court properly had jurisdiction to hear their quiet title action.
 
 III
 
 12
 Section 6201 of the Internal Revenue Code authorizes the Secretary of the Treasury or his delegate to assess all taxes, including interest, additions to taxes and assessable penalties, imposed by the Internal Revenue Code. 26 U.S.C. §§ 6201, 6301. The Secretary is required to provide notice and make demand for the amount assessed. 26 U.S.C. § 6303. If payment is not made after notice and demand, a lien arises in favor of the United States "upon all property and rights to property, whether real or personal" belonging to the delinquent taxpayer. 26 U.S.C. § 6321. As stated above, § 2410 provides a limited waiver of sovereign immunity where the government has placed a lien on real or personal property. 28 U.S.C. § 2410(a). In that case, a taxpayer can bring an action to challenge the procedural regularity of the imposition of the tax lien. Pollack v. United States, 819 F.2d 144, 145 (6th Cir.1987).
 
 
 13
 "Assessment" is a prescribed procedure for officially recording the amount of a taxpayer's administratively determined tax liability. Rambo v. United States, 492 F.2d 1060, 1061 n. 1 (6th Cir.1974), citing Cohen v. Gross, 316 F.2d 521, 522 (3rd Cir.1963). The term "assessment" has a technical meaning spelled out in the Internal Revenue Code and that meaning is binding on the federal courts and the government as well. C & R Investments, Inc. v. United States, 267 F.Supp. 932, 937 (D.Kan.1967) (citing United States v. Miller, 318 F.2d 637, 638-39 (7th Cir.1963)), rev'd on other grounds, 404 F.2d 314 (10th Cir.1968). The meaning of the term contemplates the recordation by the Internal Revenue Service of the liability of a taxpayer or the determination of the amount due as tax. Ibid.
 
 
 14
 The taxpayers claim that the assessments of their tax liability were improperly made. In a quiet title action, the burden of proof rests with the plaintiff. Alexander Hamilton Life Ins. Co. v. Government of Virgin Islands, 757 F.2d 534, 541 (3rd Cir.1985). The government enjoys a presumption of administrative regularity with respect to the acts of its officials. Parkinson v. Commissioner, 647 F.2d 875, 876 (9th Cir.1981). In order for taxpayers to overcome this presumption, they must come forward with evidence tending to show that the IRS did not follow a mandated procedure. Then the burden then shifts to the government to prove that its assessment and collection procedures were properly followed. The taxpayers failed to meet their initial burden of proof.
 
 
 15
 The Internal Revenue Code provides the manner of making an assessment as follows:
 
 
 16
 Method of Assessment--the assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of assessment.
 
 
 17
 26 U.S.C. 6203(a). Detailed procedures for making an assessment are provided in Treasury Regulation § 301.6203-1, which states that
 
 
 18
 The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of assessment.... The date of the assessment is the date the summary record is signed by an assessment officer.
 
 
 19
 Further procedures for recording assessments state that "[t]he assessment officer signs a form 23-C, Assessment Certificate, and this record, through supporting material, provides identification of the taxpayer by name and number, the taxable period, the nature of the tax and the amount assessed." Internal Revenue Manual 5312(1) MT5300-1 (11/15/85).
 
 
 20
 The taxpayers claim that the tax assessments did not meet the procedural requirements stated above. Taxpayers challenge the competency of the certified copies of master tax accounts. The process of making master tax accounts involves the use of computer printouts whereby an assessment officer puts information into the computer, a listing is printed and the assessment officer signs it. The taxpayers claim that this process, in its use of computer printouts, does not meet the procedures prescribed by the Internal Revenue Code and its implementing regulations. They claim that because the master tax account is a "computer readout ... [it] only showed that somebody had put the information in the computer."
 
 
 21
 However, the taxpayers do not provide any evidence or case law to indicate that such an assessment is improper. In fact, an IRS form certifying that taxes and failure-to-pay penalties had been assessed has been held to be "highly probative, and ... sufficient, in the absence of contrary evidence, to establish that the notices and assessments were properly made. United States v. Zolla, 724 F.2d 808, 810 (9th Cir.1983) (emphasis added), cert. denied, 469 U.S. 830 (1984).
 
 
 22
 Taxpayers argue that computer printouts, in contrast to a form which assessors fill out, can not stand alone because the computer codes that are printed out mean nothing unless interpreted and therefore the testimony of the assessor is essential to know whether or not the assessment was properly made. They argue that such testimony would be inadmissible, as the computer printout does not prove what it purports to show.
 
 
 23
 However, a computer printout is no more untrustworthy than any other part of the IRS assessment system. Computer codes have uniform meaning and are an integral part of the IRS assessment storage system. Information stored in computers is no more unreliable than information handwritten by an assessor that is legible only to that assessor. It is hard to make a distinction between a document created by transcribing an observation with typewriter or pen and a document created by transcribing an observation on a computer. The assessment merely records liability. The regulations provide that the assessing officer simply sign a summary record, with supporting documents providing the full data. How the summary record is produced, and how the supplemental documents are kept, is not crucial to the fact of a proper assessment.
 
 
 24
 Additionally, the computer printout is not the only evidence upon which the government relies. The government has also presented other evidence including certified copies of the taxpayers' master tax account and copies of notices of assessments and certified mail receipts showing that the assessments were properly made and that demands for payment were mailed to taxpayers' last known address in accordance with IRS regulations. All of this evidence indicates that government followed standard procedure in making assessments and that using a computer printout was a legitimate part of this process. The district court did not err in finding that the assessment was proper.
 
 IV
 
 25
 Internal Revenue Code § 6103, in general, prohibits the unauthorized disclosure of federal income tax returns and return information. However, there are express exceptions to this non-disclosure. In particular, § 6103(k)(6) provides:
 
 
 26
 an internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available ... with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.
 
 
 27
 The Secretary, pursuant to § 6103(k)(6), has promulgated regulations prescribing the situations and circumstances in which disclosure may be made. See Treas.Regs. § 301.6103(k)(6)-1(a) and (b).
 
 
 28
 Under these regulations, an Internal Revenue Officer or employee is authorized to disclose return information of a taxpayer against whom a collection activity is directed in order "to locate assets in which the taxpayer has an interest ... or otherwise to apply the provisions of the code relating to establishment of liens against such assets or levy on, or seizure, or sale of, the assets to satisfy any such liability." Treas.Reg. § 301.6103(k)(6)-1(b)(6).
 
 
 29
 However, the code also mandates that such disclosure is allowable only for "obtaining information, which is not otherwise reasonably available." 26 U.S.C. 6103(k)(6). The regulations state that such disclosure should be made "only ... if such activities cannot otherwise properly be accomplished without making such disclosure Treas.Reg. § 301.6103(k)(6)-1(a). Here, the government had exhausted all other means of obtaining information and nothing else was reasonably available.
 
 
 30
 We agree with the district court's holding that "it is clear that information disclosed by the establishment of a lien is not wrongfully disclosed information" and that "[d]isclosure of the same information in an attempt to satisfy the lien is, likewise, not a wrongful disclosure." JA at 37-38, citing Maisano v. United States, 908 F.2d 408, 410 (9th Cir.1990) and Flippo v. United States, 670 F.Supp. 638, 641 (W.D.N.C.1987), aff'd, 849 F.2d 604 (4th Cir.1988). Such disclosure through levy notices is no violation of taxpayers' non-disclosure rights because the information has already been publicly disclosed in the lien itself.
 
 
 31
 The taxpayers claim that the case law relied on by the district court only established the validity of disclosure of the lien itself, but did not address the issue of the content that may legitimately be disclosed. They claim that the notice of levy wrongfully disclosed the amount of the taxpayers' outstanding obligation, in violation of 26 U.S.C. 6103(k)(2), which states:
 
 
 32
 Disclosure of Amount of Outstanding Lien--If a notice of lien has been filed pursuant to section 6323(f), the amount of the outstanding obligation secured by such lien may be disclosed to any person who furnishes satisfactory written evidence that he has a right in the property subject to such lien or intends to obtain a right in such property.
 
 
 33
 The taxpayers claim that the notices of levy wrongfully disclosed the amount of their outstanding obligation for everyone to see because they did not require those third parties to show any interest in the property or intent to obtain interest in the property. However, taxpayers cite no case law for their contention that § 6103(k)(2) limits the disclosure authorized by § 6103(k)(6). Rather, § 6103(k)(2) provides a positive right for a person to request disclosure of the outstanding amount of the taxpayer's obligations secured by a lien if the person has an interest in that property. While § 6103(k)(2) provides an affirmative right, it does not prevent this information from being disclosed otherwise, for example, as authorized under § 6103(k)(6).
 
 
 34
 Even if the disclosures had violated § 6103, the good faith exception of 26 U.S.C. 7431(b) would preclude liability in this case. Section 7431(b) provides that no liability shall arise for an unauthorized disclosure of tax return information resulting from a "good faith, but erroneous, interpretation of section 6103." Thus, as a defendant in an unauthorized disclosure suit, the United States is entitled to immunity unless the agent or employee in question has acted in bad faith. Davidson v. Brady, 732 F.2d 552, 553 (6th Cir.1984).
 
 
 35
 In determining what constitutes bad faith, we apply the objective good faith standard set forth in Harlow v. Fitzgerald, 457 U.S. 800 (1982). See Davidson v. Brady, 732 F.2d at 553; Rueckert v. Gore, 587 F.Supp. 1238, 1242 (N.D.Ill.1984), aff'd 775 F.2d 208 (7th Cir.1985). Under this standard, a public official acts in good faith if her "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. A finding of bad faith requires a showing that the government official "took the action with malicious intention to cause" a deprivation of statutory rights. Harlow, 457 U.S. at 815.
 
 
 36
 While taxpayers correctly point out that the case law only provides good faith exception to liability for government employees and not the government, § 7431(b) stipulates that no liability at all shall lie under its good faith exception. It is a retraction of the waiver of sovereign immunity provided by § 6103. Although the district court did not reach the "good faith" exception theory, we hold that because Wilker reasonably believed she was permitted by § 6103 to disclose the lien information in order to collect delinquent taxes, no liability exists.
 
 
 37
 We AFFIRM the district court and hold that the issuance of levy notices to potential holders of taxpayers' property did not constitute wrongful disclosure.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 We use "taxpayer" to refer to Duane Coplin with regard to actions involving only him, while the term "taxpayers" refers to the activities of both Duane and Patricia Coplin