**Bernard M. BARRETT, Jr., M.D., and Plastic & Reconstructive Surgeons, P.A., Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America and Internal Revenue Service, Defendants-Appellees.**

No. 85–2665.

United States Court of Appeals, Fifth Circuit.

July 28, 1986.

Edward D. Urquhart, Urquhart & Hassell, Silvia E. Hassell, Charles J. Escher, Houston, Tex., for plaintiffs-appellants.

Thomas R. Lamons, Henry K. Oncken, U.S. Atty., Houston, Tex., James R. Gough, Asst. U.S. Atty., Stuart D. Gibson, Tax Div., U.S. Dept. of Justice, Appellate Section, Roger M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., Richard Perkins, Washington, D.C., for defendants-appellees.

Before WILLIAMS, JOLLY and HIGGINBOTHAM, Circuit Judges.

## OPINION

E. GRADY JOLLY, Circuit Judge:

Dr. Barrett seeks damages against the United States under 26 U.S.C. § 7431 for unlawful disclosures of tax return information during a civil and criminal investigation. The Internal Revenue Service mailed letters to Dr. Barrett's patients that were designed to determine whether cash payments had been made to him. Dr. Barrett argues that the letters were unnecessary to the IRS's investigation, and therefore improperly disclosed the fact that he was under investigation, in violation of 26 U.S.C. §§ 7431, 6103. The district court granted summary judgment for the United States. We reverse and hold that Dr. Barrett's evidence raises a genuine issue of material fact, making summary judgment inappropriate.

I

Dr. Barrett's saga has been told before. *United States v. Barrett*, [I] 787 F.2d 958 (5th Cir.1986),[1] *United States v. Texas Heart Institute*, 755 F.2d 469 (5th Cir. 1985). The IRS began auditing Dr. Barrett's tax returns on July 27, 1979. It is still investigating him. The investigation began as a civil audit, but was later transferred to the criminal investigation division. The IRS gives two reasons for transferring the case to the criminal division: its audit showed a $100,000 difference between Dr. Barrett's books and his bank records, and a confidential informant furnished incriminating information to the IRS about Dr. Barrett's tax returns. Dr. Barrett maintains that the reason for the transfer was IRS pique, stemming from his refusal to voluntarily extend the civil statute of limitations.

The IRS's investigative efforts are summarized in *Texas Heart* and *Barrett I*. The IRS sent summonses to Dr. Barrett and all the hospitals in which he practiced. The hospital summonses were designed to obtain the names of Dr. Barrett's patients, so that the IRS could compare the patients' payment information with Dr. Barrett's to determine whether he was failing to report cash payments of fees he received.

Some of the hospitals cooperated voluntarily, and provided the names. Others resisted, and the IRS filed the petition in *Texas Heart* to enforce the summons. In *Texas Heart*, we reversed the district court's decision not to enforce the summonses against the hospitals, and remanded to the district court. On remand, the district court enforced the summonses against the hospitals, but expressed some concern that the "better process would be to compare the [doctor's] ledger sheets with the lists [of patients] and only attempt to contact those patients for whom there is some cause to believe that there may be a cash payment made and not recorded in the doctor's books."

In the summons addressed to Dr. Barrett himself, the IRS sought his patient records. The district court enforced the summons,

1. The mandate was held in *Barrett I* on April 30, 1986, and has not yet issued.

and this court affirmed. *Barrett I,* 787 F.2d at 958.

In the meantime, in March 1983, the IRS, through Agent Hanson, sent letters to between 350 and 400 of Barrett's patients whose names were obtained from the cooperative hospitals. Hanson did not use standard IRS letter forms. Instead, he sent specially prepared letters that informed each patient that Dr. Barrett was under investigation by the Criminal Investigation Division of the IRS, stated the years under investigation, and requested documents concerning the patients' payments to Dr. Barrett and insurance claim information. Only eighty-one patients responded to the letters. At the time the letters were sent, the IRS had free access to Dr. Barrett's bank records, which contained much of the same information.

In November 1983, Dr. Barrett filed an action for damages under 26 U.S.C. § 7431 against the United States and the IRS. The district court held that, although the disclosures in the letters undoubtedly constituted return information, the IRS was authorized to disclose this information because of its strong interest in choosing the source of information it sought, and because the bank records were not a source of information "otherwise reasonably available" pursuant to section 6103(k)(6). Dr. Barrett appeals.

II

Dr. Barrett argues that the district court failed to recognize that 26 U.S.C. § 6103(k)(6) restricts the IRS to information not "otherwise reasonably available," and that a significant part of the information the IRS sought was reasonably available from the bank records. He argues that the affidavits he presented, describing the available bank records and normal investigative procedures, raise genuine issues of material fact concerning the necessity of sending the letters to all of Dr. Barrett's patients. Dr. Barrett also argues that, even if the letters were necessary, the IRS was not justified in telling Dr. Bar-

rett's patients that he was under criminal investigation.

Dr. Barrett also argues the district court unduly restricted discovery by denying him the opportunity to take the depositions of the IRS's alleged confidential informants, and by denying him access to a list of the patients to whom Hanson mailed the letters. Finally, Dr. Barrett argues that the district court erred in not allowing him to amend his complaint and add one of the alleged confidential informants as a defendant.

The United States maintains that IRS regulations, issued pursuant to 26 U.S.C. § 6103(k)(6), authorize the disclosures in this case. According to the United States, when the IRS collects information during an investigation, the regulations allow the disclosure of a taxpayer's identity and the nature of an agent's official duties. Moreover, the United States argues that an agent conducting a legitimate civil or criminal investigation has wide discretion to determine the manner in which he will conduct that investigation, and the courts must accord great weight to the agent's determinations. The United States argues that the agents acted under a good-faith interpretation of section 6103, and, as judged by the standard of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States cannot be held liable. 26 U.S.C. § 7431(b).

Finally, the United States argues that the district court properly denied leave to amend the complaint to add the confidential informant as a defendant because any disclosures by the informant were unrelated to the disclosures at issue here. The United States thus argues that Dr. Barrett's proposed discovery from the informants is irrelevant, and would impede the IRS criminal investigation.

III

The primary issue we face on appeal is whether the disclosures in the letters to Dr. Barrett's patients were necessary to obtain information that was not otherwise reasonably available, and in particular, whether

summary judgment should have been granted on this issue.

## IV

Fed.R.Civ.P. 56(c) states the standard for review of motions for summary judgment; in pertinent part the rule reads:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law....

The moving party has the burden of establishing that there is no genuine issue of fact, and the party opposing the motion should be given the benefit of every reasonable inference in his favor. *Harrison v. Byrd*, 765 F.2d 501, 504 (5th Cir.1985).

Accordingly, on appeal we view all materials and evidence in the light most favorable to Dr. Barrett, to determine if there is any issue of material fact, and whether judgment was properly granted for the United States.

## A.

Section 6103(a) states the general rule that returns and return information shall be confidential, and section 6103(b) defines the terms "return" and "return information" broadly, to include, *inter alia*, the taxpayer's identity, the nature, source and amount of his income, and whether his return is, was or may be subject to examination or other investigation. Section 6103(k)(6) provides an exception to the general rule of confidentiality permitting disclosures in limited circumstances: the disclosure must be "necessary" to obtain the information the IRS seeks, and the information must not be "otherwise reasonably available." [2] 26 U.S.C. § 6103(k)(6). Section 6103(k)(6) also allows the Secretary of the Treasury to limit the situations and conditions under which disclosures can be made.[3]

The district court found as a fact that Hanson disclosed return information. The district court found, however, that the disclosures fell within the exception provided by section 6103(k)(6), because the information Hanson sought was "not otherwise reasonably available."

We turn then to consider whether the disclosures were necessary, and whether the information sought was otherwise reasonably available. In the case before us, these two questions are interdependent, and we therefore consider them together. We have thus reviewed the record, and have concluded that Dr. Barrett has raised genuine issues of material fact about whether the section 6103(k)(6) exception is a bar to liability here.

Dr. Barrett provided an affidavit from a former IRS agent who stated that it was

---

**2.** Section 6103(k)(6) provides:

> An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

**3.** The IRS has argued that the following regulation, quoted in relevant part, authorized the disclosures in the letters:

> In connection with the performance of official duties relating to any ... civil or criminal investigation, ... an officer or employee of the Internal Revenue Service ... is authorized to disclose taxpayer identity information (as defined in section 6103(b)(6)), *the fact that the inquiry pertains to the performance of official duties, and the nature of the official duties* in order to obtain necessary information relating to performance of such official duties.... (Emphasis added.)

Treas.Reg. § 301.6103(k)(6)–1(a). This regulation obviously does not create additional exceptions that are not provided in the statute or issue authorizations that conflict with the statute. Thus, the regulation can only be interpreted to authorize disclosures that are "necessary" to obtain information "not otherwise reasonably available" in a given case.

not standard IRS procedure to contact first the customers of a service business, such as a medical practice, when attempting to locate unreported income. Instead, the former agent stated that the first step was usually to obtain copies of all deposit items, and that this procedure eliminated the necessity of contacting the customers in most instances. Dr. Barrett also presented an affidavit from the vice president of a bank, which stated that all deposit information concerning Dr. Barrett's account, including 900 to 1,000 patient checks per year for a five-year period, was at all times available to the IRS agent. On the basis of this uncontested affidavit, we can take it as established, for summary judgment purposes, that the bank records were reasonably available.

These affidavits, if accepted as true, create a genuine issue of material fact as to whether it was necessary for Hanson to disclose return information to each, or any, of Dr. Barrett's patients; some disclosures, perhaps all, might have been avoided by reviewing and analyzing the bank records. On the other hand, this possibility may not prove true; we do not know. Whether it is true or untrue is a factual dispute making the grant of summary judgment inappropriate.

Hanson's affidavit, which denies that the information he sought could have been obtained from bank records, only contradicts, in conclusory terms, the former agent's affidavit, and does not eliminate the material issue of fact raised. Indeed, Hanson's affidavit itself may be read to say that some of these disclosures might have been avoided if he had carefully analyzed the bank records: Hanson stated that it was necessary for him to go to the patients, rather than bank records, to determine

whether payments were made in cash, because "the basis of the investigation was that payments made in cash by patients were not being deposited by Barrett." Hanson affidavit, para. 9. To the extent, therefore, that a patient's payments were deposited, they were not unreported cash payments. Thus, if Hanson had examined the patients' checks in the bank records and other deposit information, he might or might not have eliminated disclosures to many of the 350 to 400 patients. Again, a dispute of fact is raised that the district court should properly resolve.

■ We therefore find it necessary to remand to allow the district court to consider the evidence "otherwise reasonably available," and to consider whether, in the light of the evidence available, it was necessary to send the letters. We note that the letters ask for cancelled checks, insurance information, and receipts for cash payments. Of course, there is no evidence that insurance information would have been available from the bank records. This information might or might not have been reasonably available from another source that would have made unnecessary disclosure to between 350 and 400 persons. We leave the question whether such information was otherwise reasonably available for the district court's determination on remand. Similarly, there is no evidence that proof of cash payments was reasonably available from sources other than the taxpayer. In some instances, however, the disclosures may not have been necessary once all the information available to the IRS was reviewed and analyzed. We leave the resolution of this question to the district court, based on its analysis of the evidence and the arguments of the parties.[4]

---

4. The district court, without analyzing the information available to the IRS, summarily found that no material issues of fact were in dispute. It erroneously concluded that, because the IRS has great discretion to choose sources of information when it does not already possess the information and when the method it chooses does not abuse taxpayer rights in a summons enforcement proceeding, the IRS's choice of one source makes others not reasonably available. This conclusion incorrectly borrows from the summons enforcement context. *Texas Heart Institute*, 755 F.2d at 477, n. 7. The *Texas Heart* court specifically concluded that a summons enforcement proceeding and a section 7431 action presented different issues, holding that, even if Dr. Barrett could demonstrate section 7431 violations, the summons could still be enforced. *Texas Heart* held that Dr. Barrett's proper remedy for the alleged illegal disclosures lay in this very action. *Id.* at 480.

Even if, however, the district court should determine that any or all of these three items were not reasonably available from another source, the district court will still have to determine whether it was necessary to disclose the return information contained in the letters to Dr. Barrett's patients to obtain the requested items of information. Although disclosure of the taxpayer's name was clearly necessary if the letter had to be sent at all, a genuine issue of material fact has been raised as to whether disclosure of the return information that the taxpayer was under investigation, particularly criminal investigation, was "necessary." We recognize that this may be a mixed question of law and fact; that is, the district court must interpret section 6103(k)(6) and the relevant IRS regulations in the light of the facts developed. Nevertheless, to the extent that a factual dispute is presented, it will have to be resolved by the district court on remand.

We should make clear that our holding today is not an attempt to provide a set of instructions that the IRS must follow to conduct an investigation. We emphasize that in a section 7431 action the court does *not* inquire whether the information sought is necessary: the questions are whether the *disclosures* are "necessary" to obtain the information sought and whether the information sought is "otherwise reasonably available." Stated differently, in a section 7431 action, we do not question the right, wisdom, or necessity of a particular IRS investigation. We do question, however, the means of investigation, but only to the limited extent consistent with section 7431.

■ In conclusion, we hold that the evidence presented by Dr. Barrett creates a genuine issue of material fact whether it was necessary to contact some or all of Dr. Barrett's patients, whether it was necessary to disclose each of the items of return information included in the letter mailed to Dr. Barrett's patients, and whether at least some of the information the IRS sought from the patients was otherwise reasonably available from bank records.[5]

### B.

Dr. Barrett also argues that the district court should have granted his motion to amend his complaint and to add an alleged confidential informant as a defendant. He points to section 7431(a)(2) that specifically provides for a civil action for damages against persons who are not United States employees. The district court denied the motion without comment. We therefore cannot tell whether it ruled as a matter of law or whether it exercised its judgment as a matter of discretion. Furthermore, its reasons for denying the amendment may now be moot.[6]

■ Because we remand this case to the district court, it appears that the amendment should be allowed under the liberal standard of Federal Rule of Civil Procedure 15. *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, 1188 (5th Cir. 1986). Of course, the district court can still exercise its discretion to deny the motion. Today, we hold only that it was error to deny the amendment as matter of law.

### V

This case is remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

**5.** Since the district court did not reach the issue of a possible good-faith interpretation of section 6103, we leave that issue to the district court on remand. *See Huckaby v. United States*, 794 F.2d 1041 (5th Cir.1986).

**6.** We note also that neither party raised before the district court or before us the fact that the motion failed to meet a deadline in a pretrial order. The pretrial order required that new parties be joined by October 29, 1984. Dr. Barrett did not request the alleged confidential informant be joined until January 25, 1985. Now that we have remanded for a trial, the timeliness of the amendment may be moot. The district court will have an opportunity to review all its earlier rulings in the light of our opinion today.