**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

_____

No. 93-2280

_____


BERNARD M. BARRETT, JR., M.D. and
PLASTIC & RECONSTRUCTIVE SURGEONS, P.A.,

Plaintiffs-Appellants,


VERSUS


UNITED STATES OF AMERICA, ET AL.,

Defendants,

UNITED STATES OF AMERICA,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Texas
(April 20, 1995)
_____


Before KING and BENAVIDES, Circuit Judges, and LEE[1], District
Judge.

BENAVIDES, Circuit Judge:

   In one form or another, this case has been before this Court

---

[1]District Judge of Southern District of Mississippi, sitting
by designation.

1

on five prior occasions.[2]  This appeal is taken from the district court's judgment in favor of the Internal Revenue Service ("IRS") following a bench trial held pursuant to a prior order of remand from this Court.  The district court found that the IRS did not violate sections of the tax code which prohibit the unlawful disclosure of tax return information during a civil or criminal investigation.  Because we conclude that the district court erred, we reverse the judgment and remand for a determination of Dr. Barrett's damages.

## I.  Background and Procedural History

Dr. Barrett is the president of an unincorporated Houston medical practice specializing in plastic and reconstructive surgery ("PARS").  In 1979, the IRS began an audit of Dr. Barrett's personal and corporate tax returns for the years 1977 and 1978. When the initial investigation revealed a $100,000 discrepancy between Dr. Barrett's books and his bank records, the IRS transferred the case from its civil division to its criminal division.

IRS Agent Hanson, to whom the case was transferred, determined that it would be necessary to find out from Dr. Barrett's patients the amount each had paid and whether any part was paid in cash. Two informants who were Dr. Barrett's former employees, Dr. Michael Kelly and Beverly Redick Kelly, had informed the IRS that Dr.

---

[2]  *United States v. Barrett*, 837 F.2d 1341 (5th Cir. 1988); *United States v. Barrett*, 804 F.2d 1376 (5th Cir. 1986); *Barrett v. United States*, 795 F.2d 958 (5th Cir. 1986); *United States v. Barrett*, 787 F.2d 958 (5th Cir. 1986); *United States v. Texas Heart Institute*, 755 F.2d 469 (5th Cir. 1985).

Barrett was "skimming" cash payments received from his patients.[3]

On June 17, 1982, Agent Hanson sent a summons to PARS, calling for PARS' books and records. Five days later, Dr. Barrett advised that PARS would not comply with the summons, asserting his constitutional rights under the Fourth and Fifth Amendments. Agent Hanson then sent summonses to the hospitals where Dr. Barrett performed surgery and one to Dr. Barrett individually. All but four of the sixteen hospitals complied with the summonses. The responses from the complying hospitals provided Agent Hanson with 386 names and addresses of Dr. Barrett's patients.

Nine months later, Agent Hanson sent a "circular letter" to each of the 386 patients, informing them that Dr. Barrett was being investigated by the Criminal Investigation Division of the IRS and requesting information regarding the nature and amount of the fees paid to Dr. Barrett. In addition to the years under investigation, the letters were mailed to patients treated in 1976, 1979, and 1980, years in which no IRS Examination Division work or Criminal Investigation Division work has been performed. One hundred and twenty-six letters were returned as undeliverable.

Six months later, on November 29, 1983, Dr. Barrett commenced this action in district court against the IRS, alleging violations

---

[3]In the 1989 joint pretrial order, the IRS admitted that Dr. Barrett was no longer the target of any criminal investigation involving the IRS or Agent Hanson and that no criminal charges or indictment were ever brought against Dr. Barrett as the result of the IRS investigation. Agent Hanson also testified that Dr. Barrett was no longer under any type of criminal investigation and had never been charged or indicted.

of 26 U.S.C. § 6103 and 26 U.S.C. § 7431.[4]  In short, these sections authorize a taxpayer to bring suit for unlawful disclosures of tax return information during a civil or criminal investigation.  Dr. Barrett alleged that the IRS violated these sections by unnecessarily informing his patients, through the circular letters, that he "is currently under investigation by the Criminal Investigation Division of the Internal Revenue Service." It is undisputed that this particular disclosure to Dr. Barrett's patients constitutes the disclosure of "tax return information."

In an initial attempt to dispose of Dr. Barrett's suit against the IRS, the district court granted the IRS a summary judgment. The district court concluded that the IRS was authorized to disclose this information because of its strong interest in choosing the source of information it sought and because Dr. Barrett's bank records were, as a matter of law, not a source of information "otherwise reasonably available" pursuant to the

---

[4]  26 U.S.C. § 6103(k)(6) provides:  An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title.  Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

26 U.S.C. § 7431(a)(1) provides:  If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

exception to the rule of nondisclosure contained in 26 U.S.C. § 6103(k).

On appeal, this Court reversed the district court's summary judgment, holding that there was a fact issue concerning whether the disclosures in the circular letters to Dr. Barrett's patients were necessary and whether the information sought was otherwise reasonably available. See *Barrett v. United States*, 795 F.2d 446 (5th Cir. 1986).

> [A] genuine issue of material fact has been raised as to whether disclosure of the return information that the taxpayer was under investigation, particularly criminal investigation, was "necessary." We recognize that this may be a mixed question of law and fact; that is, the district court must interpret section 6103(k)(6) and the relevant IRS regulations in the light of the facts developed.

Id. at 451.

Consequently, the case was remanded for trial to determine whether it was necessary for Agent Hanson to disclose that Dr. Barrett was currently under criminal investigation to each, or any, of Dr. Barrett's patients and, if so, whether the disclosure might have been avoided by reviewing and analyzing the bank records. The panel emphasized that the question was not whether the information sought was necessary; rather, the question was whether the disclosure was necessary to obtain the information and, if it was, whether the information sought was "otherwise reasonably available." On this appeal, we consider Dr. Barrett's appeal from the bench trial, occasioned by our previous remand, in which the district court found that the disclosure in Agent Hanson's circular letters did not violate 26 U.S.C. § 6103 and 26 U.S.C. § 7431.

5

## II. Necessity of Disclosure

With respect to the district court's underlying fact-findings and inferences deduced therefrom, we are bound by the clearly erroneous standard of review. _Robicheaux v. Radcliff Material, Inc._, 697 F.2d 662, 666 (5th Cir. 1983). However, with regard to the legal conclusions reached by the district court based upon factual data, we review these conclusions de novo, as an issue of law. Id.

In regard to the question of whether it was necessary to disclose in the circular letters the fact that Dr. Barrett was currently under investigation by the Criminal Investigation Division of the Internal Revenue Service, the district court concluded:

> It was "necessary" for Mr. Hanson to identify himself, his title and his division, the name of the taxpayer about whom he was requesting information, the nature of his inquiry, and sufficient facts about the information he was seeking to permit the recipients of the letters to comply with his request, in order to obtain the information he sought by sending the letters, which was "information not otherwise reasonably available."

(R. Vol. 1; 3213) (emphasis added). While the district court concluded that it was necessary to provide sufficient information to permit the recipients to comply, the district court did not specifically address the question of whether it was necessary to disclose that Dr. Barrett was under criminal investigation.

The IRS argues that disclosing the fact of a criminal investigation is necessary to obtain meaningful responses from third parties. Without referring to any evidence adduced at trial, the IRS argues that disclosing the criminal nature of the

6

investigation is necessary because it apprises the third parties of the potential severity of the consequences of the investigation, which may encourage them to exercise appropriate care in responding to the inquiry. To the contrary, the IRS's own expert witness, Mr. Eugene "Pete" Twardowicz, testified on cross-examination that it was not necessary to include the first paragraph in the letter which disclosed "[t]he above-named individual is currently under investigation by the Criminal Investigation Division of the Internal Revenue Service." Specifically, Twardowicz testified:

> Q: Now isn't it true, Mr. Twardowicz, that the absence of the first paragraph in that letter would not have detracted from the effectiveness of the letter?

> A: Well, I again, I think it would have detracted, and, you know, instead of beating around the bush here, does it need Criminal Investigation Division there, no, it doesn't need that, but I think it needs in there that he is under investigation. Now the question is does the addition of Criminal Investigation Division hurt it, and I think that's up to your Honor to decide that. In my judgment, it doesn't.

The IRS offered no evidence that disclosing the fact that a taxpayer is under criminal investigation is necessary to obtain the information sought by sending the letters. Cf. *Diamond v. United States*, 944 F.2d 431, 435 (8th Cir. 1991) (as a matter of law, IRS agent did not need to identify himself in circular letters as a member of the Criminal Investigation Division to secure the desired information).

The IRS previously took a conflicting position on what is relevant to the proposition that disclosing the fact of a criminal investigation promotes third-party compliance. At trial, the IRS successfully objected on relevancy grounds to the admission of

7

evidence showing how many patients actually replied or sent back information in response to the circular letters. As further evidence that the disclosure was unnecessary, the formal IRS summonses for information sent out by Agent Hanson before the circular letters did not disclose that Dr. Barrett was under criminal investigation.

Aside from the uncontradicted evidence presented through Mr. Twardowicz at trial, we note that there are several statutes that make it unlawful for third parties to give knowingly false information to an agent of the Internal Revenue Service, whether the investigation is civil or criminal. See, e.g., 18 U.S.C. § 1001; 26 U.S.C. § 7206(1); 26 U.S.C. § 7207; 26 U.S.C. § 7212. Certainly, the existence of these criminal penalties sufficiently encourages third parties to exercise appropriate care in responding to inquiries from an employee of the Internal Revenue Service.

Ordinarily, a district court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. See United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Lewis v. Timco, Inc., 736 F.2d 163, 166 n.2 (5th Cir. 1984). Here, there is no evidence to support a finding that it was necessary to state in the body of the letter that Dr. Barrett was currently under investigation by the Criminal Investigation Division of the Internal Revenue Service. In the context of our standard of review, there are not two permissible views of the evidence. See

8

<u>Anderson v. City of Besemer City, N.C.</u>, 470 U.S. 564, 573 (1985). Consequently, we hold that the district court's conclusion that such disclosure was necessary is clearly erroneous and must be reversed.

### III. Existence of Good Faith

Despite our conclusion that the disclosure was not necessary, no liability attaches to any disclosure which results from a good faith, but erroneous, interpretation of 26 U.S.C. § 6103. <u>See</u> 26 U.S.C. § 7431(b).[5]  Thus, we must determine if Agent Hanson was acting in good faith when he wrongfully sent out the circular letters.  We determine the existence of good faith under this section by applying an objective standard.  <u>Huckaby v. United States Department of Treasury, Internal Revenue Service</u>, 794 F.2d 1041, 1048 (5th Cir. 1986).  Parenthetically, the district court's failure to reach the good-faith defense issue under section 7431(b) does not prevent this Court from resolving the issue by applying an objective standard, as we did in <u>Huckaby</u>.

A reasonable IRS agent can be expected to know statutory provisions governing disclosure, as interpreted and reflected in IRS regulations and manuals.  <u>Id.</u> at 1048.  An agent's contrary interpretation is not in good faith.  <u>Id.</u> at 1049.

Agent Hanson admitted at trial that he did not review section 6103 or the applicable IRS manual provisions prior to mailing the circular letters.  Of paramount importance, however, the Chief of

---

[5]  26 U.S.C. § 7431(b) provides:  No liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103.

9

the Criminal Investigation Division had not approved the content of the circular letters as required by Chapter 347.2 of the IRS "Handbook for Special Agents." The relevant version of Chapter 347.2 required:

> To ensure proper use of this technique, mail circularization will not be undertaken in any case without the prior approval of the Chief, Criminal Investigation Division, including approval of the letters to be sent out. Care must be exercised in approving mail circularization to ensure that mail inquiries are sent only to those third parties who, in the view of the Chief, Criminal Investigation Division, are a likely source of information; the information sought is important to the investigation; and obtaining the information by other means, if at all possible, would not be practical because of either delays in investigation, costs involved, or similar reasons. Caution must be exercised not be [sic] damage the reputation of the taxpayer by making the letter either offensive or suggestive of any wrongdoing by the taxpayer. Appropriate wording could be "The Internal Revenue Service is conducting an investigation of . . .". [sic] When mailing circularizations, all such letters will be signed by the special agent with prior approval of the Chief, Criminal Investigation Division, indicated on the file copy. The title "Special Agent" and Criminal Investigation Division will be included in the signature block.

Agent Hanson testified that he was aware of this Chapter at the time that he mailed the letters. Curiously, however, Agent Hanson further testified that he did not recall any specifics of Chapter 347.2 when he prepared and mailed out the letters. As of the date of trial, Agent Hanson had worked as a special agent in the Criminal Investigation Division of the IRS for 19 years. Yet, he provided no explanation for his complete failure to follow the mandates of Chapter 347.2. See Diamond, 944 F.2d at 438 n.3 (IRS agent stated that a circular letter indicating in the body of the letter that the investigation was criminal would not be approved by

10

a supervisor under Chapter 347.2).  Finally, we note that the investigation that was being conducted by Agent Hanson was for the tax years 1977 and 1978.  Nonetheless, Agent Hanson sent letters to patients who were treated by Dr. Barrett in 1976, 1979, and 1980. No work or investigation whatsoever had been performed for these years.[6]

Applying an objective good-faith test to the uncontroverted facts, can lead us to only one conclusion: that a reasonable IRS agent would not have violated the express provisions contained in Chapter 347.2 of the IRS manual.  Agent Hanson did not act in good faith.  We reverse the judgment of the district court; the IRS is liable to Dr. Barrett under 26 U.S.C. § 6103.

## IV.  Conclusion

Because the district court erred in concluding that the IRS was not liable, it made no findings on the issue of Dr. Barrett's damages.  We acknowledge that Dr. Barrett presented uncontradicted evidence of his damages during trial, and he urges this Court to assess damages.  We believe, however, that the trial level is the appropriate site for the factual determination of the amount of damages to be awarded to Dr. Barrett as a result of Agent Hanson's

---

[6]  Interestingly, Agent Hanson also testified that he knew that the relationship between Dr. Barrett and his patients was personal and confidential.  Directly contradicting his prior sworn testimony during a related proceeding, Agent Hanson stated that he did not think that Dr. Barrett's patients who had undergone plastic or reconstructive surgery would be embarrassed, humiliated, or otherwise distressed by receiving the letters which would harm Dr. Barrett's relationship with his patients.  While this evidence does not directly impact the question of objective, as opposed to subjective, good faith, it is indicative of Agent Hanson's willfulness or gross negligence.

mailing of the circular letters.  Accordingly, we REVERSE the judgment of the district court and REMAND for a determination of damages.