Neil H. RHODES, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 4:CV–94–0038.

United States District Court,
M.D. Pennsylvania.

Oct. 13, 1995.

Mark D. Osterman, Ithaca, MI, for plaintiff.

R. Scott Clarke, U.S. Department of Justice, Washington, DC, Larry B. Selkowitz, Office of the U.S. Attorney, Harrisburg, PA, for defendant.

## *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On January 13, 1994, plaintiff Neil H. Rhodes, proceeding *pro se*, initiated this action with the filing of a complaint alleging misconduct and tortious acts by employees of defendant United States of America. On January 26, 1994, the court dismissed a portion of those claims for lack of jurisdiction. On March 11, 1994, plaintiff filed an amended

complaint, in which the sole claim asserted was unlawful disclosure of return information by Maria A. Grabinski, a Special Agent of the Philadelphia District of the Internal Revenue Service, Criminal Investigation Division (CID). An entry of appearance by counsel on behalf of plaintiff was filed on January 19, 1995.

On April 21, 1995, the court granted defendant's motion for summary judgment. In part, the court relied upon *Barrett v. United States,* Civ. No. H–83–6929, 1993 WL 379538 (S.D.Tex. filed April 1, 1993). One day prior to our decision, that opinion was reversed by the Court of Appeals for the Fifth Circuit. *Barrett v. United States,* 51 F.3d 475 (5th Cir.1995).

Based upon the Fifth Circuit's reversal of the *Barrett* opinion, we permitted plaintiff to move for reconsideration of our order of court dated April 21, 1995. Both plaintiff and defendant have filed briefs on the motion for reconsideration, and the matter is ripe for disposition.

## DISCUSSION:

### I. ISSUE BEFORE THE COURT

In our memorandum and order of April 21, 1995, we reviewed the law concerning disclosure of return information in the context of a criminal investigation. In this case, Special Agent Grabinski was working under the supervision of an Assistant United States Attorney who was conducting a grand jury investigation. We concluded that "disclosure would be authorized, and so not in violation of [26 U.S.C.] § 6103, (1) if made in connection with official duties, (2) relating to a criminal tax investigation or other offense under the internal revenue laws, (3) to the extent necessary to obtain the information, (4) if the information is not otherwise reasonably available, (5) in the manner prescribed by regulation." Memorandum of April 21, 1995, at 6.

Applying the facts, which were construed in favor of defendant since plaintiff failed to oppose the motion for summary judgment, we held that each of these requirements was met, and that defendant therefore was entitled to summary judgment.

As noted, one of the cases upon which we relied was *Barrett v. United States,* Civ. No. H–83–6929, 1993 WL 379538 (S.D.Tex. filed April 1, 1993). On April 20, 1995, the Court of Appeals for the Fifth Circuit reversed that decision. *Barrett v. United States,* 51 F.3d 475 (5th Cir.1995). Although plaintiff's brief covers a number of issues, the specific issue upon which we directed briefing for the purpose of reconsideration was whether the Fifth Circuit's decision required us to reverse our earlier decision. Even more specifically, the Fifth Circuit found that disclosures similar to those before us were more than was "necessary" to obtain the information, suggesting that the third requirement for disclosure set forth above was not met in this case.

### II. OPINION OF THE FIFTH CIRCUIT

In reversing the opinion of the district court, the Fifth Circuit took issue with the lower court's conclusion that the disclosure that the plaintiff was under criminal investigation was "necessary" to obtain the information sought. It pointed out that the IRS had not offered evidence that the recipients of the investigator's letter would not provide information absent such a disclosure. 51 F.3d at 478–479. The Fifth Circuit added that there are several statutes which make it unlawful to provide false information to the IRS, regardless of whether the investigation is criminal or civil. 51 F.3d at 479 (citing 18 U.S.C. § 1001; 26 U.S.C. §§ 7206(1), 7207, 7212.

The Fifth Circuit concluded:

Here, there is no evidence to support a finding that it was necessary to state in the body of the letter that Dr. Barrett was currently under investigation by the Criminal Investigation Division of the Internal Revenue Service.... Consequently, we hold that the district court's conclusion that such disclosure was necessary is clearly erroneous and must be reversed.

51 F.3d at 479.

In reaching this conclusion, the Fifth Circuit relied in part on *Diamond v. United States,* 944 F.2d 431, 435 (8th Cir.1991), in which the Eighth Circuit held that identification by an IRS agent as a member of the

Criminal Investigation Division was not "necessary" under § 6103. The Eighth Circuit did not reach this conclusion in the same manner as the Fifth Circuit, however. It determined that, since the agent had not made the disclosure in subsequent correspondence to the "canvassed patients," the disclosure was not necessary in the first instance. *Id.*

We believe that there are a number of problems with the approach of the Fifth Circuit and the Eight Circuit. These will be discussed at length below. Before doing so, it is important to distinguish what is meant by an objective, as opposed to a subjective, standard, since our holding is based on an objective standard more appropriate to the situation than the subjective standard applied by the Fifth Circuit.

As applicable, "objective" is defined as: . . .—*adj.* . . . 5. not influenced by personal feelings, interpretations, or prejudice; based on facts; unbiased: *an objective opinion.* 6. intent upon or dealing with things external to the mind rather than with thoughts or feelings, as a person or a book. 7. being the object of perception or thought; belonging to the object of thought rather than to the thinking subject (opposed to *subjective* ). 8. of or pertaining to something that can be known, or to something that is an object or a part of an object; existing independent of thought or an observer as part of reality. . . .

The Random House Dictionary of the English Language 1336 (2d ed. 1987) (emphasis in original). Subjective is defined as:

*adj.* 1. existing in the mind; belonging to the thinking subject rather than to the object of thought (opposed to *objective* ). 2. pertaining to or characteristic of an individual; personal; individual: *a subjective evaluation.* 3. placing excessive emphasis on one's own moods, attitudes, opinions, etc.; unduly egocentric. . . .

*Id.* at 1893 (emphasis in original).

In the context of tests or standards, "objective" refers to reliance on criteria which are universally perceived so that the results of the test may be easily reproduced. *See, e.g., Shaw v. Lindheim,* 919 F.2d 1353, 1356–

1357 (9th Cir.1990) (in copyright law, "extrinsic test" of substantial similarity between works is an objective analysis of expression based on criteria such as theme, plot, mood, setting, pace, sequence, characters, and dialogue, as opposed to the subjective "intrinsic test" of substantial similarity of expression); *Chrysler Corp. v. Dept. of Transportation,* 472 F.2d 659, 676 (6th Cir.1972) (in context of tests for establishing safety standards, objective tests are "capable of producing identical results when test conditions are exactly duplicated, . . . decisively demonstrable by performing a rational test procedure, . . ." with "compliance . . . based upon the readings obtained from measuring instruments as opposed to the subjective opinions of human beings."; footnote omitted); The Random House Dictionary of the English Language 1336 (2d ed. 1987) (in education, "objective test" is "a test consisting of questions requiring extremely short answers that can be quickly and unambiguously scored by anyone with an answer key, thus minimizing subjective judgments by both the person taking the test and the person scoring it"). In the law of negligence, the law traditionally applied the "reasonable man standard" under which the defendant was expected to exercise reasonable care under the circumstances. Black's Law Dictionary 1266 (6th ed. 1990). In these more enlightened times, the "reasonable man" standard has evolved into the "reasonable person" standard. *Compare Gottshall v. Consolidated Rail Corp.,* 988 F.2d 355, 375 (3d Cir.1993) (reasonable person standard), *reh'g denied, rev'd on other grounds,* —— U.S. ——, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), *with Suchomajcz v. Hummel Chemical Co.,* 524 F.2d 19, 24 (3d Cir.1975) (reasonable man standard).

The use of a "reasonable person" standard represents an attempt for legal purposes to reach conclusions in an objective manner based on inherently subjective events, i.e. human thought and behavior. *See, e.g. United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.) (standard for determining probable cause for issuance of a search warrant is whether there are sufficient facts to warrant the belief by a man of reasonable caution that an offense has been or is being committed; further citations omitted), *cert. de-*

*nied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993); *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389, 400 (1991) (consent to search is not voluntary if, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"; quoting *Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988)).

For present purposes, our "objective test" is an attempt to establish a standard which will reach a consistent conclusion in similar circumstances, and is based on perceptible criteria. As discussed below, in cases similar to this case, the application of an objective test is necessary because the agent/defendant is acting before any data upon which to base subjective conclusions may be gathered.

### III. SUBJECTIVE STANDARD

In its opinion in *Barrett,* the Fifth Circuit relied on the lack of record evidence concerning whether the recipients of the form letter would respond absent the disclosure. This approach, based as it is on an individual's (the letter recipient's) own thoughts, sets a subjective standard to be applied to the disclosure by the IRS: Will the particular recipients of the letter respond positively to the request for information?

A subjective standard, however, conflicts with the realities faced by an investigating agent. The agent does not know the persons to whom the form letter is addressed, and cannot tell what prompting they will need before cooperating with the investigation. Moreover, the idea of a form letter is to deal with a large number of people quickly and easily. A subjective standard would require the investigator to individualize the letters, thereby undercutting the reason for the letter.

Most importantly, a subjective standard requires a retrospective review of the actions taken by the investigator. In reality, however, the investigator must perceive the situation prospectively. For instance, the agent must consider whether using the title "Criminal Investigation Division" will be necessary before the recipient will be willing to provide information, with such consideration done before the letter is sent. The subject of the investigation then could sue, based on the use of this title (which suggests a criminal investigation). If even one of the recipients were to testify that it would have responded positively to the request absent the use of the title, the agent has disclosed more information than is necessary in the Fifth Circuit's view, and so is liable for the disclosure. The investigator, however, has no way of knowing at the time that the letters are sent whether the recipients will be willing to cooperate with less knowledge.

To all of this we would add that the criminal provisions cited by the Fifth Circuit, *Barrett,* 51 F.3d at 479, basically proscribe fraud in providing information to an IRS employee. The provisions do not mandate cooperation with an investigation. That is, when information is provided, it must be complete and truthful; however, the provisions do not require that information be provided under all circumstances. A circular or form letter does not carry the effect of a summons or subpoena.

■ It seems to this court, then, that the correct standard would be an objective standard: Would a reasonable agent, under the circumstances of the case and knowing that disclosure must be kept to a minimum, disclose this amount of information in order to obtain the cooperation of a reasonable person receiving the form letter? Under such a standard, the investigator drafting the request for information need only ask himself or herself, "Would a person receiving this letter be likely to respond positively to the request? If the answer is yes, is there any information I can omit without making it unlikely that they would respond positively?" In a sense, this test is "doubly objective": the recipient must be viewed as a reasonable person, and the agent must be viewed as a reasonable agent under the circumstances.

It was this type of standard which the district court in *Barrett* was applying when it held:

It was "necessary" for Mr. Hanson to identify himself, his title and his division, the

name of the taxpayer about whom he was requesting information, *the nature of his inquiry, and sufficient facts about the information he was seeking to permit the recipients of the letters to comply with his request,* in order to obtain the information he sought by sending the letters, which was "information not otherwise reasonably available."

51 F.3d at 478 (quoting district court opinion; emphasis added in opinion of Fifth Circuit). This court also applied an objective standard:

In the letter which is at issue, Special Agent Grabinski identified herself and her position, the authority under which she was seeking information, and a basic statement of the reason she was seeking the information. Obviously, each of these things must be stated before the recipient of the letter will be willing to cooperate, the letter disclosed no further information, and so the letter meets the third requirement. . . .

Memorandum of April 21, 1995, at 6.

In its opinion in *Barrett,* the Fifth Circuit held that the IRS had not borne its burden of showing that the disclosure was "necessary" because there was no evidence that disclosure of the fact of a criminal investigation is necessary to obtain the desired information. *Barrett,* 51 F.3d at 478. For the IRS, the question becomes, of course, what evidence it must produce to meet this burden. The Fifth Circuit appears to suggest two forms of evidence:

The IRS previously took a conflicting position on what is relevant to the proposition that disclosing the fact of a criminal investigation promotes third-party compliance. At trial, the IRS successfully objected on relevancy grounds to the admission of evidence showing how many patients actually replied or sent back information in response to the circular letters. As further evidence that the disclosure was unnecessary, the formal IRS summonses for information sent out by Agent Hanson before the circular letters did not disclose that Dr. Barrett was under criminal investigation.

*Barrett,* 51 F.3d at 478–479.

With respect to the first form of evidence, the number of patients responding, as noted above, at the time the letter was drafted, there is no way that the agent can possibly know the number of responses to particular information because the agent does not know the people who will receive the letter. The only possible relevance the number of responses can have is in determining whether recipients will respond to the information, so that one can say that the agent was correct in his assessment of the recipients when he drafted the letter. However, the agent was assessing whether a reasonable person would respond to the letter, not the particular recipients, and there is no indication that the recipients represent reasonable persons, or even that they make up a statistically significant portion of the population.

Moreover, there is no data against which to compare this information. If there were letters that did not disclose the fact of an investigation which received a similar response, then the additional information is not necessary. This approach, however, would encumber the investigator with the task of conducting comparative research in sending out such letters, and, in doing so, might well be violating the rule against disclosure.

With respect to the evidence that the fact of a criminal investigation was not disclosed in the formal summonses issued by the IRS, a summons requires an answer, *see* 26 U.S.C. § 2610, while a form letter does not. Since the recipient does not have the discretion to refuse to respond to a summons, the evidence is not analogous and provides no meaningful information as to whether disclosures therein are "necessary" for present purposes.

In short, the approach of the Fifth Circuit would make the IRS liable because its agent did not know something that it is not possible to know. The objective standard we have discussed is the appropriate manner to review the conduct of the agent because it most accurately reflects the mental process the agent must go through in determining what information should be included in a form letter such as the one at issue in *Barrett* and this case.

■ Upon reconsideration, we continue to believe that the minimal disclosures made by

Special Agent Grabinski fall within the exception set forth in § 6103. It is highly unlikely that any reasonable person would respond positively after receiving a form letter which provides only information such as "I am John Smith. I work for the IRS. I want the records of all transactions you have had with Mary Doe." *See Fostvedt v. United States,* 824 F.Supp. 978, 983 (D.Colo.1993) ("We are confident no investigation could ever proceed without disclosure of such minimal, 'nonsensitive' facts as the taxpayer's name, tax number, and the reason for the letter of inquiry."), *aff'd,* 16 F.3d 416 (10th Cir.1994) (table). It might be added that the recipient might well think *itself* under investigation when the request is made in this form. We therefore conclude that the information set forth in Special Agent Grabinski's form letter was objectively reasonable in type and amount.

## IV.  "NECESSARY"

In addition to believing that the Fifth Circuit applied the wrong standard in *Barrett,* we believe that the Court applied an overly restrictive definition of "necessary" as the word is used in § 6103. No definition is provided in the statute.

In *Barrett,* the Fifth Circuit did not specifically define the word "necessary," but held that the district court should have entered judgment in the plaintiff's favor because the IRS did not show that it would not have received meaningful responses to its inquiries if it did not disclose the fact of a criminal investigation. 51 F.3d at 478. In other words, the IRS had to show that if any word or phrase had been omitted from its letters, it would not have obtained the information it sought. Only under such circumstances is a disclosure necessary: "But for the presence of these words, the recipient would not have disclosed the information sought."

Again, this reading of the statute establishes a subjective, retrospective standard. It is impossible for an investigator to comply with such a standard because the investigator is viewing the anticipated reaction of the recipient prospectively. Because of this prospective view, the investigator necessarily must view the recipient objectively. A subjective standard simply is not workable.

Defendant argues that we should use a more general definition of "necessary" than the manner in which the Fifth Circuit defined the word. Generally,

This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought....

Black's Law Dictionary 1029 (6th ed. 1990) (citation omitted).

In the context in which the word is used, we believe the less restrictive use is more appropriate. Since the investigator must determine whether the information provided in a letter will obtain the desired response, but cannot know exactly what information set forth in exactly what form will obtain the response, the investigator must make the disclosures in a manner that seems reasonable and appropriate. That is, the investigator must be given some leeway because of the variables which may exist: the type and amount of information sought; the relationship between the recipient of the letter and the subject of the investigation; whether the investigation is criminal or civil; the information already gathered; etc. Again, it must be kept in mind that the investigator is not likely to be familiar with the recipients of the letters, and so cannot anticipate easily their reactions to the letters.

■  In short, a disclosure is "necessary" when it is one which an investigator would reasonably believe will elicit the desired information from a reasonable recipient of the letter, but cannot reasonably be read as in-

tending to provide more information than is sufficient for this purpose. This interpretation is consistent with the spirit of § 6103 as well as its practical applications. Moreover, it is consistent with the fact that § 6103 is violated only when the disclosure is made in bad faith. *See* 26 U.S.C. § 7431(b).

## V. EIGHTH CIRCUIT'S OPINION

In *Diamond,* the Eighth Circuit reached a conclusion similar to that of the Fifth Circuit. Instead of requiring evidence to be submitted by the IRS, however, the Eighth Circuit reviewed the circumstances of the disclosure and concluded that it was not necessary to disclose the fact of a criminal investigation. The circumstances on which the Eighth Circuit relied were: (1) the agent identified himself only as a "Special Agent" without mentioning the CID in follow-up letters to many of the recipients of the original letters; (2) the agent did not mention the CID in summonses prepared to gather information on the plaintiff's financial transactions; (3) other agents in the state had not mentioned the CID in similar circular letters; and (4) in it's pre-trial stipulation of facts, the government had not mentioned the agent's CID affiliation when detailing the agent's position with the IRS.

That the agent had not mentioned his name in follow-up letters seems to us to be a non-factor. Obviously, the recipients of the follow-up letter already had the information from the original letter. Moreover, since these were follow-up letters, the recipients would be those people who responded to the original letters, i.e. those who had indicated a willingness to cooperate in the investigation. The absence of the CID identification would not affect the anticipated responses from these people. It might also be added that the agent is more likely to have had contact with the recipients of follow-up letters, since they would be the people who had responded to the initial circular letter.

With respect to the summonses, we have discussed previously the fact that they are not analogous to a circular letter or mass mailing because failure to respond to a summons is a criminal offense. Thus, the recipient of a summons lacks the discretion to refuse to respond, as with the circular letter.

The Eighth Circuit also points out that other agents had not included CID identification in similar letters. However, there is no indication of the response to those letters, nor is there an indication that there was no other difference in the circumstances of the cases.

Finally, the Eighth Circuit focused on the fact that the government had not mentioned the agent's CID affiliation in its pre-trial stipulation of facts. It is unclear how, in a case centering on the inclusion of this information in the circular letter at issue, this fact was not before the court in some form. Moreover, we fail to see how the government's treatment of this information during the course of litigation is in any way related to the consideration it would be given by a reasonable recipient of one of the circular letters.

As with the opinion of the Fifth Circuit in *Barrett,* the Eighth Circuit in *Diamond* appears to be looking at more than the information that is available to the individual agent at the time the letters are drafted. As discussed above, since it is impossible for the agent to look retrospectively at the effects of the letter, review which is based on a retrospective view of the case is inappropriate, and the result we have reached above is unchanged by our reading of *Diamond.*

## VI. THIRD CIRCUIT AUTHORITY

In arguing for summary judgment, the United States relies in part on *Barnes v. United States,* 73 A.F.T.R.2d ¶ 94–581 at 94–1161(P–H) (3d Cir.1994) (". . . the disclosures caused by the summonses, i.e. Mr. Barnes' identity and the fact that he was the subject of an investigation, were necessary to obtain the information sought."). An unpublished opinion is not cited as authority within the Third Circuit. Third Circuit Internal Operating Procedure 5.8. Moreover, the report and recommendation of the magistrate judge, on which the district court relied, indicates that it was the validity of the summonses that was in question, not whether the specific disclosure was necessary to obtain the desired information. *Barnes v. United States,*

**826**

Civ. No. 90–0997, Report and Recommendation at 4–9 (W.D.Pa. issued August 2, 1991), *adopted*, Order of Court dated August 27, 1991 (W.D.Pa.), *aff'd*, 17 F.3d 1428 (3d Cir. 1994) (table).

## VII. CONCLUSION

Having reviewed the opinion of the Fifth Circuit in *Barrett*, as well as the opinion of the Eight Circuit in *Diamond*, we adhere to the ruling we set forth in our Memorandum and Order of Court dated April 21, 1995. In contrast to the Fifth Circuit's opinion, we believe that an objective, rather than a subjective, standard applies, and that the Fifth Circuit used an overly restrictive definition of "necessary" as applies to § 6103. The district court opinions upon which we relied in our earlier order more accurately reflect the proper disposition of cases brought pursuant to that section.

In essence, the Fifth and Eighth Circuit opinions seem to read that a letter to person with information about a taxpayer being investigated would read approximately as follows: "My name is John Smith. I work for the IRS. Please send me all documents in your possession which relate to your dealings with XYZ Corporation." It seems to us patently obvious that the recipient of such a letter will be unlikely to respond in any meaningful way. In fact, it seems just as likely that the recipient will believe *itself* to be the object of an investigation.

For these reasons, plaintiff's motion for reconsideration of our Memorandum and Order of Court dated April 21, 1995, will be granted. Upon reconsideration, we will reaffirm our earlier disposition, i.e. summary judgment in favor of defendant.